19423. KLEINBERG *v.* LYONS.

JENKINS, P. J. 1. Under the rules of the common law, the duty of making repairs upon rented premises devolved upon the tenant, but by the provisions of section 3699 of the Civil Code (1910), in the absence of an agreement to the contrary, this obligation is placed upon the landlord, who is liable to the tenant for any injury incurred by reason of his failure to perform such duty. But in a case where the landlord has fully parted with possession and right to the possession of the premises, there is no duty of inspection on his part for the purpose of discovering defects arising subsequent to the time of the lease, and he is, therefore, not liable to his tenant for injuries resulting from defects

thus arising, unless he has had actual knowledge of them, or has been notified of such defects and has failed to make repairs within a reasonable time and the tenant could not have avoided the injuries resulting therefrom by the exercise of ordinary care on his own part. *Stack* v. *Harris*, 111 *Ga.* 149 (36 S. E. 615); *McGee* v. *Hardacre*, 27 *Ga. App.* 106 (2) (107 S. E. 563).

2. Where, however, a qualified possession and right to possession is retained in the landlord for a specified purpose, such, for instance, as will enable him to comply with his contractual obligation to provide heat for the rented tenement, the duty of inspecting the heating plant and appliances, for the purpose of discovering and remedying any defects arising from their proper and ordinary use, is incumbent upon the landlord, and consequently, independently of any notice, he would be liable to the tenant for any injury occasioned by the defective condition of such appliances arising from their proper and ordinary use, or by reason of the negligent performance of such duty on the part of the landlord, either by himself or by an agent. But an inspection by the landlord is not required for the purpose of anticipating and discovering defects arising from an abnormal and improper use or misuse of such equipment. In such a case it would be incumbent upon the tenant to repair any defect thus occasioned, and this duty could not be transferred to the landlord by notifying him of the condition which the tenant had thus brought about.

3. It is the duty of the tenant "to abstain from using any part of the premises the use of which would be attended with danger," and such continued use of that portion of the knowingly defective premises which ordinary prudence would suggest would be attended with danger will amount to contributory negligence on the part of the tenant, such as would preclude a recovery for the injury which must have been reasonably anticipated. *Stack* v. *Harris*, supra; *Donehoo* v. *Crane*, 141 *Ga.* 224, 225 (80 S. E. 712).

4. It is a general rule that the members of the tenant's family, as well as visitors, customers, servants and licensees in general, stand in the same position, so far as injuries caused by a defective condition of the rented premises are concerned, as the tenant himself does, and if the tenant has a prima facie cause of action against the landlord on account of the landlord's failure to perform his duty to repair a defective condition of the rented premises, such members of the family, visitors, or licensees, standing in the tenant's shoes, would have the same right to complain. But since the right of such third persons is dependent upon a breach by the landlord of his duty to the tenant, they would not ordinarily have any greater prima facie right than the tenant himself. 16 R. C. L. 1067, § 588. As a general rule, the landlord is not liable to third persons for any injuries they sustain, occasioned by the wrongful act of his tenant, since the tenant is not the agent of the landlord, and he is not responsible as such for the tenant's misconduct. *Edgar* v. *Walker*, 106 *Ga.* 454 (32 S. E. 582); *Gardner* v. *Rhodes*, 114 *Ga.* 929 (42 S. E. 63, 57 L. R. A. 749). It might well be, however, that although the obligation to invitees is the same, and not greater than, the obligation to tenants, this does not mean that any *defense*

available against a tenant would necessarily also be available against a stranger lawfully visiting the tenant. 36 C. J. 224, § 913. In other words, conduct on the part of the tenant constituting contributory negligence such as might, under the preceding part of this decision, bar a recovery on his part, would not necessarily be taken as constituting the proximate cause of an injury such as would bar a visitor who did not himself participate in the negligent act of the tenant.

5. Where, however, as in the instant case, the act of the tenant does not consist merely in contributory negligence in continuing to occupy a portion of the rented premises after knowledge of its dangerous condition, but where the steam explosion causing the injury was occasioned by the act of the tenant in turning on the heat after admitted knowledge that the air valve had become loose so as to render the radiator dangerous, and after the steam had been cut off for that reason, her act in so doing must necessarily be accounted, not as mere contributory negligence, such as would bar a recovery on her part, but as constituting the proximate cause of the injury, such as would prevent recovery on the part of any person claiming damages on account of the failure of the landlord to perform his duties to the tenant. The most generally accepted theory of causation is that of natural and probable consequences; and in order to hold the defendant liable, the evidence must show either that the act of the defendant complained of was the sole occasion of the injury, or that it put in operation other causal forces, such as were the direct, natural, and probable consequences of the original act, or that the intervening agency could have reasonably been anticipated or foreseen by the original wrongdoer. *Gillespie* v. *Andrews*, 27 *Ga. App.* 509, 510 (108 S. E. 906). Assuming, therefore, negligence on the part of the defendant, it can not be reasonably supposed that the defendant could have foreseen that one knowing the condition of the valve, and knowing that its operation would be attended with danger, would, after the radiator had been shut down on account of such danger, and the defect and danger reported to the landlord by herself, proceed to turn the steam back into the radiator while in such dangerous and defective condition. To suggest that the assumed original negligence of the defendant was such as could have caused her to anticipate that some one in the role of an intervening agency, who was unaware of the defective and dangerous condition of the radiator, might naturally proceed to turn on the steam, does not meet the facts and circumstances in the case as they actually exist, since the injury was not thus brought about; but the intervening agency actually causing the injury was not such as the defendant could reasonably have anticipated or foreseen. This being true, the intervening agency must be taken to constitute the proximate cause of the plaintiff's injury. See *Andrews* v. *Kinsel*, 114 *Ga.* 390 (2), 392 (40 S. E. 300, 88 Am. St. R. 25).

6. In the instant case it was a question of fact whether the defect in the air-valve had been brought about by the ordinary and proper use of the heating appliance, or whether it had been brought about by the misuse and manipulation of the same by the children of the tenant using it for a plaything. It was further a question of fact whether the landlord, after knowledge, or after having imputed knowledge, of its dangerous

condition, had used all proper and reasonable diligence in taking steps to remedy such defect, as well as whether the landlord had used proper precautionary measures towards preventing the use of the defective radiator pending its repair. These were questions of fact for the jury which might or might not have been resolved in favor of the defendant. But since the evidence is plain, and it is admitted, without dispute, that the tenant, after ascertaining the defective condition of the air-valve, and after reporting it as dangerous, and after the steam had been cut off from the radiator to which it was connected pending repairs, turned the steam back into the radiator, according to the evidence for the defendant, over the protest of the janitor, but, at all events, with knowledge of the dangerous condition, it must be held, as a matter of law, that one claiming damages on account of the failure of the landlord to comply with duties to the tenant can not recover for an injury which necessarily must have been proximately brought about by the negligent act of the tenant. This is true irrespective of any possible error in the charge relative to the imputation of all negligence of the tenant to the plaintiff, such as would bar a recovery by the plaintiff on account of mere contributory negligence by the tenant, and irrespective of any error in the charge relative to the duty of a three-and-a-half-year-old child to exercise any degree of care and diligence on its own part. The verdict being demanded by the evidence, the judgment overruling the motion for new trial is

*Affirmed. Bell, J., concurs. Stephens, J., dissents.*

DECIDED JUNE 3, 1929.

*Branch & Howard, E. L. Tiller* for plaintiffs.

*Reuben R. & Lowry Arnold, B. P. Gambrell,* for defendant.

STEPHENS, J., dissenting. I can not concur in the conclusion of the majority of this court that it is conclusively established by undisputed testimony, as a matter of law, that Mrs. Mendel, the tenant, turned the steam into the radiator with knowledge of the attending danger, and that therefore her act in so doing was an agency independent of any act of the defendant and is the proximate and solely responsible agency causing the resulting injury to the plaintiff.

The record shows that Mrs. Mendel, in addition to testifying as indicated in the statement of facts, testified in immediate connection therewith as follows: "As to why I did not let the children play in the other room, if I had known it was that dangerous I would not have allowed them in there. No, I did not know anything like that was going to happen. No, sir, nobody could know it was going to happen. No, I had no idea it was going to happen. No, I had never known one of these valves in a radiator to blow out before. I did not know anything about radiator valves. No, I never knew of one to blow out before." She testified also as follows: "As to why I thought the valve dangerous—because it seemed to be loose; I did not know why it was leaking; I thought it was dangerous to have leaking around the radiator valve." On the other hand Mrs. Lyons, the defendant, who was the owner of the building, testified, in reference to the alleged statement to her by Mrs. Mendel that the radiator was in a dangerous condition, that "she [meaning Mrs. Mendel] did not say she thought it was dangerous, . . she did not tell me it was dangerous."

Mrs. Mendel's testimony to the effect that, before the explosion of the radiator, she had notified the defendant, Mrs. Lyons, that the condition of the radiator was dangerous, is not evidence that it was in fact dangerous and that she, Mrs. Mendel, knew of the danger, but is evidence only to the effect that she had, in an extra-judicial statement, stated that the condition of the radiator was dangerous. As Mrs. Mendel is not a party to the case, this statement, if made by her, has no probative value as an admission. It is purely hearsay, and, as such, of course, has no probative value as tending to prove the condition of the radiator. It possesses value only as tending to impeach the testimony of Mrs. Mendel, who was only a witness in the case. Besides, this statement, if Mrs. Mendel made it, does not demand the inference that, if the radiator at the time was in a dangerous condition, Mrs. Mendel knew of this danger. The jury could have regarded this statement as being merely an emphatic, exaggerated and self-serving statement made by the tenant for the purpose of inducing the landlord to repair the radiator, and not as establishing as a fact that the true condition of the radiator was known to the tenant. Mrs. Mendel having testified that had she known that the condition of the radiator was dangerous she would not have allowed the

children to play near it, and that when she turned the steam into it she did not know what the result would be, and there being testimony that she had not made the statement attributed to her that the condition of the radiator was dangerous, the evidence authorizes the inference that she did not know the danger incident to the turning of the steam into the radiator, and that she did not have sufficient knowledge to cause her to anticipate that the turning of the steam into the radiator would produce what actually happened as a result thereof.

I am of the opinion that the evidence is sufficient to authorize the inference that the defendant was negligent in leaving the radiator in a dangerous condition, and that this negligence was the proximate cause of the plaintiff's injury. I am of the further opinion that the court erroneously instructed the jury that the negligence, if there was any, of the tenant, Mrs. Mendel, could be imputed to the plaintiff; and since the evidence was sufficient to authorize a verdict for the plaintiff, this error demands that the verdict found for the defendant be set aside and that a new trial be granted to the plaintiff.