A95A0292. LITTLE RAPIDS CORPORATION v. McCAMY.
A95A0293. PHYSICIAN SALES & SERVICE, INC. v. McCAMY.

(460 SE2d 800)

McMURRAY, Presiding Judge.

Plaintiff Virgil Mark McCamy brought this tort action against defendant Little Rapids Corporation d/b/a Graham Medical Products ("Little Rapids") and defendant Physician Sales & Service, Inc. ("Physican Sales"), alleging that Little Rapids, at its facility in Holyoke, Massachusetts, "negligently loaded the truck [plaintiff was driving with medical supplies] so as to cause [the truck] to be crammed or the pallets therein to be improperly stacked." Plaintiff's ultimate destination was the location of defendant Physician Sales in Marietta, Georgia. While unloading plaintiff's truck, agents and employees of Physician Sales "negligently operated a forklift so as to cause certain medical supplies to fall on the Plaintiff causing him injury."

The case was tried before a jury, which found for the plaintiff. Viewed in the light most favorable to that verdict,[1] the evidence showed that plaintiff was employed as a long-distance trucker, "dispatched mainly to the eastern seaboard and provinces of Quebec and [Ontario]." On July 2, 1991, he was dispatched to Little Rapids' facility in Holyoke, Massachusetts, to pick up a load of disposable medical products, such as examination capes, gowns, and table rolls for doctors' offices. "[T]his was the first time that [he had ever gone] up there[.]" Plaintiff slept "while [employees of Little Rapids] loaded the truck[.]" The truck was "already completely loaded when they woke [plaintiff] up[.]" The truck was "pretty full[; . . . there was just barely enough room for [plaintiff] to get [his] locks and stuff in there." Inside the trailer, cardboard dividers, reaching "from top to bottom," separated the loads designated for different stops. Plaintiff left Little Rapids' Holyoke, Massachusetts facility and drove without incident to West Columbia, South Carolina, to another stop in Atlanta, Georgia, and then on to Physican Sales' facility in Marietta, Georgia. There, plaintiff was to deliver seven pallets of medical supplies. He volunteered to help the Physician Sales' employees unload the truck, to "make sure the count was alright."

Edward F. Sophranowitz, a supervisor and group leader in Little Rapids' shipping department, explained that shipments of medical supplies were stacked on pallets and then bound by shrink wrap, i.e., the supplies were horizontally wrapped completely around in plastic wrap by placing the pallet on a turntable. The plastic wrap tightly binds the supplies in a stack. However, Little Rapids would only

---

[1] The dissent does not expressly state whether it is merely reweighing the evidence or whether it erroneously concludes (without distinguishing Supreme Court precedent) that plaintiff has assumed the risk of *another's* negligence.

shrink wrap up to a height of "ninety inches or less, because that's the maximum height . . . of [its] warehouse door[.]" Consequently, Little Rapids "can't shrink wrap to the top" of a loaded pallet. Little Rapids' employees would place loose loads of "the light stuff to top off [the shrink wrapped load, such as] examination capes and gowns." This was Little Rapids' "standard procedure in every truck." The loading order for plaintiff's deliveries reflects that "on the top of the load delivered to Marietta, Georgia was 20 cases of hand towels."

Plaintiff understood the purpose of shrink wrapping was "to secure the load and keep it from shifting. . . ." However, this particular load "wasn't shrink wrapped all the way up." Plaintiff did not know this when he left Holyoke, Massachusetts, because of the divider that "went all the way from the bottom to the top." When he arrived at his stop in Marietta, Georgia, the truck "was a mess. . . . We took the divider down and then we seen [sic] what it was. Some of it — was not shrink wrapped. One of them had fell [sic] over. It was just the way they crammed it into the nose of the trailer and that's all they did." Plaintiff told the two Physician Sales employees, Anthony Eugene Coleman and Kenny Strom, "to be careful . . ." as they unloaded the truck. He "thought it was an unsafe load . . . [because it] was not shrink wrapped completely." On top of the shrink wrapped portion "were a couple of layers of boxes." These boxes came "[w]ithin three inches . . ." of the trailer ceiling. Physician Sales employees unloaded six stacks without incident. However, with the final stack, the Physician Sales employee, Anthony Coleman, "knew he only had three inches [clearance]. . . ." Plaintiff stepped into the trailer and behind Anthony Coleman to pick up some loose "[r]olls of paper [that] fell off," taking care to remain "far enough back to make sure . . ." nothing further would fall on him. While plaintiff was carrying the box of paper rolls, Coleman stopped in front of him at the edge of the trailer by the loading dock. Plaintiff also "stopped to see what the problem was." He had just bent over and set the box down when Anthony Coleman started pulling the last stack over the lip and out the trailer door. The "top layer of boxes hit the edge of the door and some fell off." Plaintiff was approximately four-and-one-half feet away when "the load started falling on [him]. It hit [him] in the head, shoulder and mouth. . . ." There were four or five boxes atop the stack, each box weighing, in plaintiff's estimation, "about thirty-five to forty pounds. . . ." Anthony Coleman "never considered [whether he could knock loose boxes from the top of a shrink wrapped pallet with only three inches clearance if he caught the lip of the trailer,] because it had never happened before. [He had] never run into [any]thing before." Anthony Coleman raised the height of the pallet by jacking the hand-operated forklift before attempting to exit the trailer.

Pursuant to a special verdict, the jury awarded plaintiff $200,000 against Physician Sales and $100,000 against Little Rapids. In Case No. A95A0292, Little Rapids appeals from the judgment entered by the trial court against it, and in Case No. A95A0293, Physician Sales appeals from the judgment entered against it. The two cases are hereby consolidated for disposition on appeal. *Held*:

## Case No. A95A0292

1. Little Rapids enumerates the denial of its motion for directed verdict, arguing first that "the undisputed facts clearly establish that plaintiff assumed the risk of injury, thereby barring plaintiff from recovery against the defendant." Specifically, Little Rapids argues that defendant's admissions establish that plaintiff "knew that there were loose boxes on top of the [last] pallet[. . . which] could possibly fall on him[, . . . yet] he walked within a distance so close to the stack that he was struck by the falling boxes."

" 'The doctrine of the assumption of the risk of danger applies only where the plaintiff, with a full appreciation of the danger involved and without restriction from his freedom of choice either by the circumstances or by coercion, deliberately chooses an obviously perilous course of conduct so that it can be said as a matter of law he has assumed all risk of injury. (Cit.)' [(Emphasis omitted.)] *Myers v. Boleman*, 151 Ga. App. 506, 509 (3) (260 SE2d 359)." *Girone v. City of Winder*, 215 Ga. App. 822, 824 (2), 825 (452 SE2d 794). " ' "In its simplest and primary sense, assumption of risk means that the plaintiff, in advance, has given his consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone." Prosser, Law of Torts (4th ed.) p. 440. . . .' *Osburn v. Pilgrim*, 246 Ga. 688, 695 (273 SE2d 118) (1980)." *Stallings v. Cuttino*, 205 Ga. App. 581 (1), 582 (422 SE2d 921). "However, '(i)t is not true that in any case where the plaintiff voluntarily encounters a known danger he necessarily consents to any future negligence of the defendant. A pedestrian who walks across the street in the middle of a block, through a stream of traffic travelling at excessive speed, cannot by any stretch of the imagination be found to consent that the drivers shall not use care to watch for him and avoid running him down. On the contrary, he is insisting that they shall. *This is contributory negligence pure and simple; it is not assumption of risk.* . . . (T)he plaintiff has exposed himself to the risk of future harm, but he has not consented to relieve the defendant of any future duty to act with reasonable care. . . .' Prosser & Keeton, The Law of Torts, § 68, p. 485 (5th ed. 1984)." *Beringause v. Fogleman Truck Lines*, 200 Ga. App. 822, 823 (4) (409 SE2d 524). Significantly, "the rule does not

extend to assuming the risk of the negligent act of another. *Thomas v. Shaw,* 217 Ga. 688 [(1)] (124 SE2d 396)." *Owens-Illinois, Inc. v. Bryson,* 138 Ga. App. 78, 79 (225 SE2d 475).

In the case sub judice, undisputed evidence that plaintiff knew of the type of harm posed by the loose boxes on top of the secure load does not demand a finding that plaintiff consented in advance to relieve defendant Little Rapids of liability for any injuries subsequently sustained while plaintiff bent over and set the box down, in order to see why Mr. Coleman had stopped and then moved again without warning. Plaintiff's proximity to this foreseeable hazard may be evidence of contributory or comparative negligence on the part of plaintiff but it is not an assumption of the risk. *Beringause v. Fogleman Truck Lines,* 200 Ga. App. 822, 823 (4), supra. Compare *Tennison v. Lowndes-Echols Assn. for Retarded Citizens,* 209 Ga. App. 343, 344 (433 SE2d 344), where the plaintiff in that case knew of the precise risk involved and yet "voluntarily climbed on top of [a] pallet of lumber [in an attempt to unload it,] knowing that the forklift was too small[, could become unbalanced and would overturn if the load of lumber shifted]." "The facts here do not measure up to a classic case of assumption of the risk such as trying to beat a rapidly approaching train across the crossing or participating in a drag race. See in this connection *Yandle v. Alexander,* 116 Ga. App. 165, 167 (156 SE2d 504)." *Kitchens v. Winter Co. Builders,* 161 Ga. App. 701 (1), 703 (289 SE2d 807). The trial court did not err in denying Little Rapids' motion for directed verdict on the ground that plaintiff assumed the risk as a matter of law. OCGA § 9-11-50 (a).

2. Next, Little Rapids contends the trial court erred in denying its motion for directed verdict, arguing that any negligence on its part "was broken by the intervening negligence of [Anthony] Coleman."

" 'The most generally accepted theory of causation is that of natural and probable consequences; and in order to hold the defendant liable, the evidence must show either that the act of the defendant complained of was the sole occasion of the injury, or that it put in operation other causal forces, such as were the direct, natural, and probable consequences of the original act, or that the intervening agency could have reasonably been anticipated or foreseen by the original wrongdoer.' *Kleinberg v. Lyons,* 39 Ga. App. 774 (5) (148 SE 535) [(1929)]. 'In Georgia, questions of negligence and proximate cause are ordinarily reserved for the jury, but in plain and undisputed cases the court may make a determination as a matter of law. (Cits.)' *Hercules, Inc. v. Lewis,* 168 Ga. App. 688, 689 (309 SE2d 865) (1983)." *Southern Intermodal Logistics v. Coleman,* 175 Ga. App. 853 (1) (334 SE2d 888). " 'It is well settled that there can be no proximate cause where there has intervened between the act of the defendant and the injury to the plaintiff, an independent, intervening, act of

someone other than the defendant, which was not foreseeable by defendant, was not triggered by defendant's act, and which was sufficient of itself to cause the injury. (Cits.)' *Union Carbide Corp. v. Holton*, 136 Ga. App. 726, 729 (222 SE2d 105) (1975). ' " 'If an injury would have occurred notwithstanding alleged acts of negligence of the defendant, there could be no recovery,' in an action for negligence. (Cit.)" (Cit.) "(W)here the evidence plainly and manifestly shows that the injury was caused by the intervening efficient act of (a) third person . . ., the defendant can not be held responsible for having produced the injury, and the question is then one of law for determination by the court, and not one of fact for the jury." (Cit.)' *Lewis v. Atlanta Cas. Co.*, 179 Ga. App. 185, 189 (345 SE2d 858) (1986)." *Jones v. Central of Ga. R. Co.*, 192 Ga. App. 806, 807 (386 SE2d 386). " 'The [legal] inquiry is not whether the defendant's conduct constituted a cause in fact of the injury, but rather whether the causal connection between that conduct and the injury is too remote for the law to countenance a recovery. (Cit.)' (*Rustin Stamp &c., Inc. v. Ray Bros. Roofing &c. Co.*, 175 Ga. App. 30, 32 (332 SE2d 341) (1985).)" *Atlanta Gas Light Co. v. Gresham*, 260 Ga. 391, 392 (4), 393 (394 SE2d 345).

In the case sub judice, the jury was authorized to find that foreseeable injury to cargo handlers was a direct, natural, and probable consequence of Little Rapids' dangerous practice of stacking loose boxes atop the shrink wrapped items, even in the absence of any negligent handling when unloading. Accordingly, the jury was authorized to conclude that plaintiff would not have been injured *but for* Little Rapids' initial failure to exercise ordinary care in preparing its products for shipping. The evidence does not demand a finding that any negligence on the part of Anthony Coleman was the *sole* cause of plaintiff's injuries. As we cannot say that Little Rapids' conduct did *not* constitute a proximate cause of plaintiff's injuries, the case sub judice remains within the general rule that questions of negligence, comparative negligence, and proximate cause are issues to be determined by the jury. *Southern Intermodal Logistics v. Coleman*, 175 Ga. App. 853 (1), 854, supra. Compare *Atlanta Gas Light Co. v. Gresham*, 260 Ga. 391 (1), supra, involving "a static condition existing on a tract of real property." The trial court correctly denied Little Rapids' motion for directed verdict on the ground that the negligence of Anthony Coleman was a superseding, intervening cause.

3. Lastly, Little Rapids enumerates the refusal of the trial court to give its written "Request to Charge Number [45]," which reads as follows: "I charge you that if it appears that between the alleged negligent act of Graham Medical Products and the incident complained of by the plaintiff there intervened an independent negligent act of Anthony Coleman which was the direct and proximate cause of the

alleged injury and damage to the plaintiff, then and in that event plaintiff would not be entitled to recover any amount from Graham Medical Products unless the independent, intervening act of Mr. Coleman was foreseeable or triggered by the act of Graham Medical Products."

At the charge conference, the trial court concluded that "the jury is going to have to decide the relative negligence of all the parties involved, including the plaintiff." The court further explained to defense counsel: "[Y]ou can argue there's an intervening cause and so forth, I'm going to charge on the pattern charge [on concurrent negligence and comparative negligence] and let [the jury] make the decision." The record reflects that the trial court gave the pattern charge on "Intervening Cause Rules," Council of Superior Court Judges, Suggested Pattern Jury Instructions, Vol. I, Civil Cases, Part XXXII (F), Torts (3rd ed. 1991).

"On the trial of all cases it is the duty of the judge to charge the jury the principles of law applicable to all issues raised by the pleadings and the evidence, even without a request for such an instruction. [Cits.]" *Claxton v. Claxton*, 214 Ga. 715, 719 (2) (107 SE2d 320). Accord *Clarke v. Cotton*, 263 Ga. 861, 862 (440 SE2d 165). "It is axiomatic that a jury charge need not be given in the exact language requested if the charge as given clearly covers the circumstances of the case. All that is necessary, provided the requested charge accurately states the relevant principles of law, is that these principles be fairly given to the jury in the general charge. When it can be determined that the charge actually given conveys correctly the intent of the law and is so framed as to be applied with understanding [by the jury] to the fact situation, denial of a request for a specific charge is not reversible error." (Citations and punctuation omitted.) *Hitchcock v. Key*, 163 Ga. App. 901, 903 (3, 4) (296 SE2d 625).

In the case sub judice, there is considerable doubt whether defendant's submitted request is a complete and non-argumentative statement of the law, befitting a jury instruction. See *Firestone Tire &c. Co. v. Pinyan*, 155 Ga. App. 343, 347 (4) (270 SE2d 883). Moreover, the pattern instruction on intervening causes adequately covered the substance of defendant's request, when "[viewed] from the perspective of the average juror, unschooled in law. . . ." *Smoky, Inc. v. McCray*, 196 Ga. App. 650, 652 (5), 656 (396 SE2d 794). Accordingly, the trial court did not err in using the language of the pattern charge in preference to the language requested. See *Brown v. State*, 214 Ga. App. 733, 736 (4) (449 SE2d 136); *Wright v. State*, 211 Ga. App. 474, 477 (4) (440 SE2d 27). This enumeration is without merit.

*Case No. A95A0293*

4. Defendant Physician Sales enumerates the denial of its motion for directed verdict, arguing as did Little Rapids that plaintiff "assumed the risk" of injury incident to unloading the trailer. For the reasons stated in Division 1, supra, the jury was authorized to conclude that the negligence of Little Rapids conjoined with the negligence of Physician Sales proximately caused plaintiff's injuries. "In order for a defendant to invoke the doctrine of assumption of the risk it must be established that the plaintiff deliberately chose an obviously perilous course of conduct and fully appreciated the danger involved. *Whitehead v. Seymour*, 120 Ga. App. 25 (4) (169 SE2d 369). An act of contributory negligence or an error in judgment is not necessarily an assumption of risk (*Yandle v. Alexander*, 116 Ga. App. 165 (156 SE2d 504)), and the rule does not extend to assuming the risk of the negligent act of another. *Thomas v. Shaw*, 217 Ga. 688 [(1)] (124 SE2d 396)." *Owens-Illinois, Inc. v. Bryson*, 138 Ga. App. 78, 79, supra. In the case sub judice, the trial court correctly denied Physician Sales' motion for directed verdict since plaintiff did not assume the risks involved in the careless handling by Anthony Coleman of the merchandise as dangerously packed by Little Rapids.

5. Physician Sales enumerates the trial court's instruction on the "last clear chance" doctrine, arguing that the charge was not adjusted to the evidence because Anthony Coleman, positioned on one side of the pallet, could not see plaintiff on the other side.

"The doctrine of last clear chance can be invoked 'only where the defendant *knows* of the plaintiff's perilous situation, and realizes, or has reason to realize, the plaintiff's helpless condition, that the defendant is charged with the duty of using with reasonable care and competence his *then* existing ability to avoid harming the plaintiff.' *Southland Butane Gas Co. v. Blackwell*, 211 Ga. 665, 670 (88 SE2d 6) (1955)." (Emphasis in original.) *Ga. Southern &c. R. Co. v. Odom*, 152 Ga. App. 664, 665 (2) (263 SE2d 469). Accord *Bennett Drug Stores v. Mosely*, 67 Ga. App. 347, 349 (20 SE2d 208) (applying 2 Restatement of the Law of Torts, 1257, 1258, § 480).

In the case sub judice, Anthony Coleman affirmed that he could not see plaintiff inside the trailer "because I was on the other side . . ." of the loaded pallet, pulling it toward the door. However, the bare fact that he could not *see* the plaintiff does not contradict his subsequent testimony that he "assume[d] that [plaintiff] was [hurt by the falling boxes] because he was on that side of the load." This is evidence of Anthony Coleman's *actual* knowledge that plaintiff was still in the trailer (where he had gone to pick up a loose box that had already fallen from the top of the shrink wrapped stack) when Coleman jacked the pallet up and began pulling the pallet off "until it hit

the door." In Anthony Coleman's estimation, this caused "[p]robably fifteen boxes . . ." to fall on plaintiff. Other evidence indicated that Anthony Coleman considered a load that was not shrink wrapped and was loose on top to be unsafe, and that he would " 'probably think that they would fall off.' " Contrary to defendant's contentions, this evidence was sufficient to authorize a jury's determination "that even though the [plaintiff's] actions may have placed [himself] in a position of peril, [defendant's agent knew of this and] had the last opportunity to avoid the [calamity] and was negligent in failing to do so. See *Harrison v. Feather*, 178 Ga. App. 35, 36 (342 SE2d 1) (1986). Accordingly, we find no error in the giving of the charge [on last clear chance]." *Branch v. Maxwell*, 203 Ga. App. 553, 556 (5c) (417 SE2d 176).

*Judgments affirmed. Beasley, C. J., Birdsong, P. J., Pope, P. J., Blackburn, Smith and Ruffin, JJ., concur. Johnson and Andrews, JJ., dissent.*

ANDREWS, Judge, dissenting.

Because I believe that plaintiff McCamy assumed the risk of injury when he stopped so closely to the loose boxes that they struck him when they fell off the pallet jack, I must respectfully dissent.

"The defense of assumption of the risk requires (1) that the plaintiff had some actual knowledge of the danger; (2) that (he) understood and appreciated the risk therefrom; and (3) that (he) voluntarily exposed (himself) to that risk. (Cits.)" "In its simplest and primary sense, assumption of risk means that the plaintiff, in advance, has given his consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone. (Cits.)" *Tennison v. Lowndes-Echols Assn. for Retarded Citizens*, 209 Ga. App. 343, 344 (433 SE2d 344) (1993).

Plaintiff McCamy knew of the danger involved when moving loose boxes with no wrapping on them to keep the boxes from shifting. Plaintiff McCamy even warned Tony Coleman about jacking the boxes too high because they would hit the top of the trailer and fall off the pallet. This is precisely what occurred. Therefore, plaintiff McCamy had actual knowledge of the danger and appreciated the risk of accident, i.e., the boxes falling, due to that danger.

Further, plaintiff McCamy voluntarily exposed himself to that risk of harm. As Tony Coleman was unloading the last load, plaintiff McCamy followed behind him, carrying a box. McCamy testified that Tony Coleman was walking backwards and pulling the pallet jack off the truck and, therefore, could not see McCamy who was behind the load of boxes. McCamy further testified that Tony Coleman stopped because he was having trouble getting the load off the truck. McCamy

then saw Coleman push the load back and raise the load with the pallet jack. Nevertheless, plaintiff McCamy was standing so close to the load of loose boxes on the pallet jack that when the boxes hit the top of the truck and fell, they struck him.

The majority opinion cites *Beringause v. Fogleman Truck Lines,* 200 Ga. App. 822 (409 SE2d 524) (1991), for the proposition that plaintiff McCamy's proximity to the dangerous load may be evidence of contributory negligence, but cannot be considered assumption of the risk. But, in *Beringause,* plaintiff's decedent was injured when a truck driving in the opposite direction, swerved into plaintiff's decedent's lane and struck the car he was driving head on. The court held that, while there might be evidence of contributory negligence, this was not a case of assumption of the risk. Id. at 824. The court stated that just because a person decides to participate in a convoy he cannot be said to have assumed the risk that a truck will swerve into his lane and hit his car. Id. The court went on to state that plaintiff's decedent may have been contributorily negligent, however, because he was driving the lead car in a convoy and was using flashing emergency lights, thus causing oncoming drivers to slow down. There was evidence that the truck which hit plaintiff's decedent's car was forced to swerve to avoid hitting the car slowing in front of him. Id. at 825.

But, *Beringause* is not analogous to the situation in the instant case. The risk of harm in the instant case was not tenuous or theoretical, but specific and very real. Moreover, plaintiff McCamy had personal knowledge and experience of the danger posed by unloading loose boxes from the truck. In addition, plaintiff McCamy had warned Tony Coleman just minutes before to be careful not to raise the boxes too high and hit the top of the truck.

In my opinion, this case is similar to *Tennison,* supra, in which the truck driver attempted to help the forklift operator remove a load of lumber from the truck. The Court held that the plaintiff truck driver voluntarily assumed the risk of a known danger when he climbed onto the pallet of lumber knowing that the forklift was too small and could turn over. *Tennison* at 344.

Thus, because plaintiff McCamy had actual knowledge of the danger and risk involved in moving the loose boxes, and yet still followed so closely behind the pallet jack that when the boxes did fall they struck him, plaintiff McCamy voluntarily assumed the risk of the danger. Therefore, the trial court erred in denying defendants' motion for directed verdict.

I am authorized to state that Judge Johnson joins in this dissent.

Decided July 7, 1995 —
Reconsiderations denied July 26, 1995 —

*Swift, Currie, McGhee & Hiers, W. Ray Persons, Micheal D. Watson, Monique R. Walker,* for Little Rapids Corporation.

*Barnes, Browning, Tanksley & Casurella, Roy E. Barnes,* for Mc-Camy.

*Webb, Carlock, Copeland, Semler & Stair, Douglas A. Wilde, James R. Doyle II,* for Physician Sales & Service.