[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12018
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-04182-MLB

GREGORY WIEDEMAN,

Plaintiff - Appellant,

versus

CANAL INSURANCE COMPANY,
H & F TRANSFERS, INC.,
AUTO-OWNERS INSURANCE COMPANY,
WALTER PATRICK DORN, IV,

Defendants - Appellees,

JOHN DOE NO.'S 1 - 5, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(May 2, 2019)

Before TJOFLAT, WILSON, and JORDAN, Circuit Judges.

PER CURIAM:

The parties to this appeal were in a serious traffic accident. At trial, the key factual dispute for the jury was which party had the right of way at the time of the accident. The jury resolved the issue in the defendants' favor. The plaintiff now appeals, asserting that the district court erred in (1) refusing to grant his motion for a mistrial, and (2) instructing the jury on defenses of assumption of risk and avoidance of consequences. We disagree and affirm.

I.

Gregory Wiedeman sustained severe injuries when his motorcycle collided with a 26,000-pound box truck driven by Walter Patrick Dorn on a highway intersection one rainy night. The collision occurred when Dorn, traveling south, took a left turn across the northbound lanes down which Wiedeman was traveling. Dorn was driving in the course and scope of his employment with H&F Transfer, Inc., a household moving company.

Two police officers responded to the scene of the accident. Dorn spoke to both officers and told them that he had a green light and that Wiedeman had run a red light immediately prior to the collision. Wiedeman was unconscious when Dorn spoke to the first officer but had regained consciousness by the time Dorn spoke with the second officer, Officer Yimer. After speaking with Dorn, Yimer

2

asked Wiedeman—who was receiving medical treatment—if he had run a red light. Wiedeman responded in the affirmative. Wiedeman does not remember making this statement. Yimer issued a citation to Wiedeman for running a red light. Wiedeman later challenged this citation and prevailed in traffic court.

Wiedeman initiated suit against Dorn and H&F Transfer (collectively, Defendants) in state court.[1] He alleged that Dorn, while driving the box truck in the course and scope of his employment with H&F, failed to yield the right of way when Wiedeman had a green light. Defendants removed the case to federal district court and argued that they were not liable because Dorn actually had the green light.

Prior to trial, the parties agreed that neither side would produce any evidence about the ticket issued to Wiedeman on the night of the accident. In presenting evidence at trial, Defendants called Officer Yimer to testify about that night. Before he took the stand, the district court privately warned Yimer that he was not to testify about the ticket that he issued. During his testimony, Yimer testified that Wiedeman had admitted to running a red light at the scene of the accident. Wiedeman's counsel cross-examined Yimer about this testimony; on re-direct

---

[1] Wiedeman also sued Canal Insurance Company and Auto-Owners Insurance Company under the Georgia direct-action statute, O.C.G.A. § 40-1-112, which permits suit against insurers of commercial motor carriers like H&F in suits against such carriers. Canal had issued a liability insurance policy that covered H&F and Dorn. Auto-Owners had also issued a liability insurance policy covering H&F and Dorn, but an issue of fact existed as to whether the policy had been cancelled. This issue was never decided because of the defense verdict on liability.

examination, Yimer stated that if Wiedeman had not made such an admission, he "wouldn't have issued any ticket or . . . done any other report."

On re-cross, Wiedeman attempted to undermine this testimony by noting that Wiedeman had ultimately been acquitted of the ticket that Yimer wrote, but the district court ended this line of inquiry. After the district court prohibited inquiry into the acquittal, Wiedeman moved for a mistrial based on his contention that the jury had heard Yimer's prejudicial testimony about the ticket and this prejudice could not be remedied. The district court denied this motion but offered to instruct the jury to ignore any statement about the ticket. Wiedeman declined the court's offered instruction.

Before the case went to the jury, Wiedeman objected to the district court's inclusion of jury instructions on assumption of risk and avoidance of consequences. The district court overruled both objections. During deliberations, the jury asked for a copy of the police report and citation from Yimer; the district court refused to provide the materials and advised the jurors to disregard Yimer's testimony about the ticket in their deliberations. The jury later returned a verdict for Defendants. Wiedeman now appeals.

## II.

We review a district court's denial of a motion for mistrial for abuse of discretion. *United States v. McGarity*, 669 F.3d 1218, 1232 (11th Cir. 2012).

4

"A curative instruction purges the taint of a prejudicial remark because a jury is presumed to follow jury instructions." *United States v. Simon*, 964 F.2d 1082, 1087 (11th Cir. 1992) (internal quotation marks omitted). "When a court gives a direct and explicit curative instruction regarding improper testimony, it supports the court's decision not to grant a mistrial by decreasing the possibility of undue influence." *United States v. Perez*, 30 F.3d 1407, 1411 (11th Cir. 1994).

"An instruction to disregard evidence withdrawn from the jury is sufficient grounds for an appellate court to uphold a trial court's denial of a motion for mistrial unless the evidence is so highly prejudicial as to be incurable by the trial court's admonition." *United States v. Slocum*, 708 F.2d 587, 598 (11th Cir. 1983). Such a level of prejudice exists when there is a significant possibility that, "considering the other evidence presented by both [parties], the stricken statement had a substantial impact upon the verdict of the jury." *United States v. Arenas-Granada*, 487 F.2d 858, 859 (5th Cir. 1973).[2]

When Officer Yimer made his allegedly prejudicial statement about the ticket he issued, Wiedeman did not move to strike the comment from the record. The district court did not allow Wiedeman to pursue this topic further by questioning Yimer about Wiedeman's traffic court acquittal during re-cross.

---

[2] *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) holds that all decisions of the "old Fifth" Circuit handed down prior to the close of business on September 30, 1981 are binding in the Eleventh Circuit.

Wiedeman moved for a mistrial; the court denied this motion, noting that Yimer's lone remark about issuing a ticket had been brief and could be put aside by the jury. The court also offered to give a curative instruction after Yimer made his allegedly prejudicial statement, but Wiedeman ultimately declined that offer. When the jury requested more information on Yimer's issuance of the ticket, the district court explicitly instructed the jury to disregard any mention of that ticket.

Wiedeman claims the district court abused its discretion in denying his motion for a mistrial. He asserts that no jury instruction could have cured Yimer's highly prejudicial statement, and points to the jury's request for Yimer's police report and citation to show that Yimer's statement seriously affected the jury's verdict. The district court, however, responded to the jury's request by expressly instructing the jury *not* to consider Yimer's testimony about issuing a ticket. In light of this express instruction, and considering the other evidence presented to the jury by both parties, the district court did not abuse its discretion in concluding that Yimer's single statement would not have a substantial impact on the jury's verdict. *Arenas-Granada*, 487 F.2d at 859.

### III.

We review the style and wording of jury instructions for abuse of discretion and give trial judges wide discretion as to the style and wording employed, but we review de novo whether an instruction misstates the law or misleads the jury.

6

*Gowski v. Peake*, 682 F.3d 1299, 1310 (11th Cir. 2012) (per curiam). "Under this deferential standard, we examine whether the jury charges, considered as a whole, sufficiently instructed the jury so that the jurors understood the issues and were not misled. We will not reverse the district court unless we are left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *Adams v. Austal, U.S.A., LLC*, 754 F.3d 1240, 1248 (11th Cir. 2014) (internal citations and quotation marks omitted).

"If there is no basis in the record for the instruction given, such error may raise a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations, and reversal may be required." *Christopher v. Cutter Labs.*, 53 F.3d 1184, 1194 (11th Cir. 1995) (internal quotation marks omitted). "A defendant is entitled to have the court instruct the jury on the theory of the defense, as long as it has some basis in the evidence and has legal support." *Id.* at 1195. "We review the trial in its entirety to determine the prejudicial effect of [the] instruction." *Id.*

We have previously recognized that, under Georgia law, "a plaintiff assumes a risk when he deliberately chooses an obviously perilous course of conduct with full appreciation of the danger involved." *Clayton v. Travis*, 109 F.3d 669, 672 (11th Cir. 1997) (internal quotation marks omitted). Assumption of the risk exists when the defendant establishes that the plaintiff (1) had actual, subjective

7

knowledge of the danger; (2) "understood and appreciated the risks associated with such danger"; and (3) "voluntarily exposed himself to those risks." *Id.*[3]

A survey of Georgia case law reveals that applying this standard has produced complicated and, at times, seemingly conflicting results. An actor who assumes a risk must make their choice "without coercion of circumstances" and take "the risk of a danger which is so obvious that he knows or must know of it, as in trying to beat a rapidly approaching train across the track, or in accompanying one who he knows is about to engage in a drag race, or in walking out onto a frozen pond where the ice is thin, etc." *Whitehead v. Seymour*, 169 S.E.2d 369, 371 (Ga. Ct. App. 1969). "When a person voluntarily undertakes an obviously dangerous activity, that person can be said to have assumed the risks necessarily attendant to that activity." *Teems v. Bates*, 684 S.E.2d 662, 666 (Ga. Ct. App. 2009). In most cases, "the plaintiff's consent to assume the risk is not express but rather is implied by his or her conduct." *Id.*

"Knowledge of the risk is the watchword of assumption of risk, and means both *actual* and *subjective* knowledge on the plaintiff's part," applying only to the "specific, particular risk of harm associated with the activity or condition that

---

[3] Assumption of the risk can be hard to distinguish from contributory negligence. The Restatement (Second) of Torts declares that, in theory, "assumption of risk rests upon the voluntary consent of the plaintiff to encounter the risk and take his chances, while contributory negligence rests upon his failure to exercise the care of a reasonable man for his own protection." Restatement (Second) of Torts § 496A (1965). The two defenses may overlap, however, "where the plaintiff voluntarily consents to take an unreasonable chance." *Id.*

proximately causes injury." *Champion v. Pilgrim's Pride Corp. of Del.*, 649 S.E.2d 329, 331 (Ga. Ct. App. 2007). In elaborating on knowledge of the risk, the Georgia Court of Appeals has stated that "[a] driver who chooses to drive on the wrong side of the road assumes the risk that an oncoming car will hit him, and it does not matter whether he appreciates the risk of the particular vehicle that hits him." *Rayburn v. Ga. Power Co.*, 643 S.E.2d 385, 390 (Ga. Ct. App. 2007).

But mere negligence in driving is not enough to qualify as assumption of a risk, and courts have recognized that a plaintiff may voluntarily encounter a known danger without consenting to "any future negligence of the defendant." *Little Rapids Corp. v. McCamy*, 460 S.E.2d 800, 803 (Ga. Ct. App. 1995). For example,

> [a] pedestrian who walks across the street in the middle of a block, through a stream of traffic travelling at excessive speed, cannot by any stretch of the imagination be found to consent that the drivers shall not use care to watch for him and avoid running him down. On the contrary, he is insisting that they shall.

*Id.* The pedestrian may be contributorily negligent, but they have not assumed the risk of being hit—they have not "consented to relieve the defendant of any future duty to act with reasonable care." *Id.*

In *Vaughn v. Pleasent*, the Georgia Supreme Court differentiated between negligent driving and assumption of the risk: a police officer, while responding to an emergency, was speeding with his siren sounding and lights flashing. 471

S.E.2d 866, 867 (Ga. 1996).  The officer, Vaughn, approached an intersection and attempted to pass around a trailer that he believed to be parked on the roadside; he did not observe any signals indicating that the trailer was moving or turning.  *Id.* He crossed the center line in the road to proceed around the trailer and then noticed that it was hitched to a pickup truck.  *Id.*  The pickup truck turned left across the intersection, colliding with Vaughn's police car.  *Id.*

The Georgia Supreme Court determined that an instruction on assumption of the risk was inappropriate because the record "reveal[ed] no evidence that Officer Vaughn had actual knowledge that Pleasant intended to turn left in front of him, and nonetheless knowingly and voluntarily continued to travel in excess of the speed limit in emergency fashion through the intersection."  *Id.* at 865; *see also Beringause v. Fogleman Truck Lines, Inc.*, 409 S.E.2d 524, 526 (Ga. Ct. App. 1991) (holding that an assumption of risk defense would only apply if there was evidence that, "*after* the truck had swerved into his lane of traffic, [the officer] had then made a conscious and voluntary decision to proceed and risk a head-on collision").  In *Vaughn*, the Georgia Supreme Court also emphasized that even though Vaughn was speeding and crossed the center line of the road, he "did not consent that civilian drivers . . . relinquish their obligation to yield the right-of-way to him.  Quite the contrary, by his use of [flashing emergency lights and police siren], Vaughn was notifying them of their obligation to yield the right-of-way."

10

471 S.E.2d at 869; *see also Beringause*, 409 S.E.2d at 526 ("[B]y his use of flashing emergency lights, [plaintiff] was insisting that the other drivers use care to watch for him and avoid hitting his vehicle and the other vehicles in the convoy."). As a later Georgia Court of Appeals explained, "[a]lthough the officer [in *Vaughn*] had assumed the general risks associated with speeding through an intersection on the wrong side of the road, he had no reason to anticipate the negligent actions of the parked truck driver who would ignore the siren and flashing lights and from a parked position and without signaling turn left across the path." *Hillman v. Carlton Co.*, 522 S.E.2d 681, 683 (Ga. Ct. App. 1999).

There is disputed evidence that Wiedeman had actual knowledge that he had a red light and chose to proceed through the intersection. Though the parties disagree about these facts, there was some evidentiary basis for providing an instruction on assumption of the risk. Wiedeman might have knowingly accepted the risks attendant with running a red light. One obvious risk of running a red light is colliding with a vehicle that has the right of way—even a vehicle that is properly making a turn. Here, if Wiedeman did not have the right of way, and did not legally signal to other drivers that he expected them to cede the right of way, a jury could find that he assumed the risk of being hit by a vehicle that *did* have the right of way. The jury could have reasonably decided—based on the totality of evidence and the arguments presented by the parties—that Defendants were

11

entitled to the assumption of risk defense. Thus, the district court did not err in providing this instruction.

Wiedeman also argues that the district court erred by instructing the jury about the avoidance doctrine. Wiedeman does not contend that the court misstated the law,[4] but rather that the court misconstrued the facts in concluding that it was an appropriate charge. *See Christopher*, 53 F.3d at 1194. Though Wiedeman asserts that there is no evidence to support this charge, it seems that the district court correctly recognized some disputed evidence—including testimony about Wiedeman's attempt to swerve away from the collision—that supported this theory of defense. Thus, the court did not err in providing this instruction to the jury.

The district court did not abuse its discretion in denying Wiedeman's motion for a mistrial, nor did it err in providing instructions on assumption of the risk and avoidance of consequences to the jury. Accordingly, we affirm.

**AFFIRMED.**

---

[4] Under Georgia law, a plaintiff may not recover "if the plaintiff by ordinary care could have avoided the consequences to himself or herself caused by the defendant's negligence." *Weston v. Dun Transp. & Stringer, Inc.*, 695 S.E.2d 279, 282 (Ga. Ct. App. 2010). "The plaintiff must exercise ordinary care for his own safety, and must by the same degree of care avoid the effect of the defendants' negligence after it becomes apparent to him or in the exercise of ordinary care he should have learned of it." *Lowery's Tavern, Inc. v. Dudukovich*, 507 S.E.2d 851, 854 (Ga. Ct. App. 1998).

12