A03A0756. GEORGIA PIPE COMPANY v. LAWLER et al.
(584 SE2d 634)

JOHNSON, Presiding Judge.

This is an appeal by the defendant in a wrongful death action from a final judgment in favor of the plaintiffs. We find no error mandating a new trial, but we do find that the court erred in calculating the amount of the judgment. We therefore reverse the judgment entered and remand the case with direction that the trial court enter judgment in the correct amount.

Georgia Pipe Company manufactures PVC pipe in Thomasville. On February 8, 1999, Richard Randall, an employee of Cresco Lines, Inc., drove his tractor-trailer to Thomasville to pick up pipes for delivery to Georgia Pipe customers. A Georgia Pipe employee loaded the bundles of pipe onto the trailer, and Randall then secured the bundles to the trailer with straps. The bundles, which were twenty feet long, consisted of wood planks placed around the pipes and three metal bands wrapped around the wood.

Shortly after Randall left the Georgia Pipe lot, the metal bands around one bundle of pipes broke and the load shifted. Randall returned to the lot, where Georgia Pipe employees unloaded the broken bundle and replaced it with a new bundle. Randall again strapped the load to the trailer, and then left Thomasville.

Approximately three hours later, Randall stopped at a Speedway Truck Stop in McDonough for fuel. During the stop, he checked the load and found that one of the metal bands on two different bundles had separated, so each of those bundles was held together by only two metal bands. Randall placed two extra trailer straps over the bundles with broken bands and continued on the delivery trip.

He proceeded north to Interstate Highway 575 in Cherokee County. As Randall headed down a hill on the highway, he put his foot on the brake and then lost control of his tractor-trailer. The load of pipes shifted, and Randall's entire rig tipped over. The tractor-trailer landed on its side, slid through a grass median and hit a sign post. The sign fell on the roof of a southbound car driven by John Lawler IV, who suffered severe head injuries. Eight days later Lawler died from the injuries.

Lawler's father and mother, John Lawler III and Melissa Lawler, sued Georgia Pipe, Cresco and Randall for their son's death. John Lawler III also sued in his capacity as the administrator of his son's estate. On January 14, 2002, the case proceeded to a jury trial.

On the fourth day of trial, Cresco and Randall moved for a mistrial based on improper testimony about Randall's alleged lack of experience and training, issues that had previously been excluded from the trial. Georgia Pipe joined in the motion. The court announced that it was granting the motion for a mistrial.

But before the court released the jury, the estate and the Lawlers asked for a recess, during which they settled their claims against Cresco and Randall for $1 million. The lump sum settlement was not allocated among the separate plaintiffs. The estate and the Lawlers then moved the court to reconsider its declaration of a mistrial as to Georgia Pipe, arguing that the basis for the mistrial — improper testimony about Randall — did not prejudice Georgia Pipe. The trial court agreed, granted the motion to reconsider and allowed the trial to continue against Georgia Pipe.

On January 22, 2002, the jury returned a verdict in favor of the estate and the Lawlers. The jury awarded $93,800 to John Lawler III as the administrator of the estate. And the jury awarded $1,625,000 to the Lawlers, as parents, for the full value of the life of their son.

Approximately three months after the verdict, the estate, the Lawlers, Cresco and Randall executed their $1 million settlement, allocating $700,000 to the estate and $300,000 to the parents. On June 13, 2002, the trial court entered its judgment against Georgia

Pipe, setting off the apportioned settlement amounts from the jury verdict. The court thus awarded the Lawlers $1,325,000, having subtracted their $300,000 settlement amount from the jury award of $1,625,000. And the court awarded no money to the estate because its settlement amount of $700,000 exceeded the verdict amount of $93,800. Georgia Pipe appeals from the final judgment.

1. Georgia Pipe contends that the trial court erred in entering judgment for $1,325,000 in favor of the Lawlers. Georgia Pipe asserts that the court should not have set off the allocated portions of the settlement from the verdict because those allocations were made after the verdict was returned. Rather, the trial court should have set off the entire $1 million settlement from the entire verdict of $1,718,800, and entered judgment in the amount of $718,800. We agree.

*King Cotton, Ltd. v. Powers*[1] provides that when plaintiffs settle their claims with some, but not all, defendants, there are two options: the court may disclose the settlement amount to the jurors and instruct them to consider the amount in their verdict, or the court may withhold the settlement amount from the jurors and instruct them to disregard anything they may have heard regarding settlement and return a verdict for the total amount due each plaintiff.[2] If the latter option is elected, the court must then set off the amount of the settlement allocated to each plaintiff from the jury's award.[3]

In *King Cotton*, the latter option was followed after the plaintiffs reached a settlement with all but one of the defendants prior to the verdict. The settlement in *King Cotton* was in the amount of $750,000 and was not allocated between the various plaintiffs. This court held that the trial court must set off the entire unallocated settlement amount against the total amount of the verdict.[4] The rationale for the holding was that each plaintiff was entitled to only one full satisfaction of his injury, and the remaining defendant was entitled to the full benefit of the $750,000 settlement paid by the other defendants.[5]

> Having aggregated their individual claims and entered into a collective unallocated lump sum settlement with the other defendants, [plaintiffs] would not be entitled thereafter to resegregate their claims and manipulate their allocation of

---

[1] 200 Ga. App. 549 (409 SE2d 67) (1991).
[2] Id. at 551 (2).
[3] Id.
[4] Id.
[5] Id.

the settlement amount among themselves so as to secure more than one full satisfaction and to deny [defendant] the full benefit of the $750,000 as a set off. In a tort action, compensation, and not enrichment, is the basis for the award of damages.[6]

In the instant case, the estate and the Lawlers reached an unallocated lump sum settlement with Cresco and Randall prior to the return of the jury's verdict against Georgia Pipe. As explained in *King Cotton*, they were not entitled, thereafter, to manipulate their allocation of the settlement amount among themselves so as to secure more than one full satisfaction and deny Georgia Pipe the full benefit of the $1 million as a set-off.

The jury determined that full satisfaction for the estate and the Lawlers was $1,718,800. By manipulating the allocation of the settlement after the return of the verdict, the estate and the Lawlers have attempted to increase their total recovery. The purported settlement allocation of $700,000 for the estate combined with the trial court's judgment of $1,325,000 for the Lawlers equals a total recovery of $2,025,000. Such a recovery, which is more than $300,000 over the full amount awarded by the jury, would amount to enrichment rather than compensation.

The trial court erred in allowing the estate and the Lawlers to reap such a windfall by manipulating the allocation of their settlement after the jury had returned its verdict. Because the settlement was unallocated at the time the verdict was returned, the full amount of the settlement must be set off from the entire jury verdict.[7] Accordingly, the judgment is hereby reversed and the case is remanded to the trial court with direction that the total verdict of $1,718,800 must be reduced by $1 million, and the trial court should enter judgment against Georgia Pipe in the amount of $718,800.

2. Georgia Pipe argues that the trial court should have granted a directed verdict in its favor because Randall's intervening negligence of continuing with the load after finding broken bands on two separate bundles was the sole proximate cause of the accident. The argument is controlled adversely to Georgia Pipe by the analogous case of *Little Rapids Corp. v. McCamy*.[8]

In that case, the plaintiff was injured when medical supplies

---

[6] (Citation and punctuation omitted.) Id.

[7] See *Brown v. Southern Aggregates Co.*, 207 Ga. App. 886-887 (1) (429 SE2d 294) (1993) (where a plaintiff settles with one or more tortfeasors and proceeds to trial against the remaining tortfeasor, any damages awarded at trial must be reduced by the settlement amount).

[8] 218 Ga. App. 111 (460 SE2d 800) (1995).

being unloaded from a delivery truck fell on him.[9] The defendant which had negligently loaded its medical supplies onto the truck sought a directed verdict on the basis that the negligent unloading of the truck by another defendant's employee was the intervening proximate cause of the plaintiff's injuries.[10] This court ruled that a directed verdict was not appropriate under those circumstances because questions of negligence and proximate cause were for the jury to resolve.[11]

> In Georgia, questions of negligence and proximate cause are ordinarily reserved for the jury, but in plain and undisputed cases the court may make a determination as a matter of law. It is well settled that there can be no proximate cause where there has intervened between the act of the defendant and the injury to the plaintiff, an independent, intervening, act of someone other than the defendant, which was not foreseeable by defendant, was not triggered by defendant's act, and which was sufficient of itself to cause the injury. If an injury would have occurred notwithstanding alleged acts of negligence of the defendant, there could be no recovery, in an action for negligence. Where the evidence plainly and manifestly shows that the injury was caused by the intervening efficient act of a third person . . . , the defendant cannot be held responsible for having produced the injury, and the question is then one of law for determination by the court, and not one of fact for the jury. The legal inquiry is not whether the defendant's conduct constituted a cause in fact of the injury, but rather whether the causal connection between that conduct and the injury is too remote for the law to countenance a recovery.[12]

In the instant case, there was evidence that Georgia Pipe negligently bound its twenty-foot bundles of pipe with only three metal bands, when it should have used five bands. Moreover, given the fact that on the date in question bands on three different bundles separated, the jury could have found not only that the pipes were negligently bundled, but also that Georgia Pipe negligently loaded the bundles onto the delivery truck. Under these circumstances, we cannot say with any certainty that Randall's intervening conduct was the sole proximate cause of the accident or that the accident would

---

[9] Id. at 111-112.
[10] Id. at 114-115 (2).
[11] Id.
[12] (Citations and punctuation omitted.) Id.

have occurred notwithstanding Georgia Pipe's negligence. Rather, the jury was authorized to find that Georgia Pipe's negligence triggered the events that led to Randall's foreseeable conduct. Thus, the causal connection between Georgia Pipe's negligence and the accident is not too remote for the law to countenance a recovery against Georgia Pipe. Because the questions of negligence and proximate cause were issues for the jury to resolve, the trial court did not err in denying Georgia Pipe's motion for a directed verdict.

3. Georgia Pipe complains that the trial court erred in denying its request to open and conclude closing arguments since it did not introduce any evidence. Georgia Pipe was required to make this request before testimony by the other parties was submitted.[13] But Georgia Pipe did not ask to open and conclude arguments until after the estate and the Lawlers had submitted evidence and rested their case. The trial court therefore did not err in denying the untimely request to open and close arguments.

4. Georgia Pipe claims that the trial court erred in withdrawing its declaration of a mistrial as to Georgia Pipe on the fourth day of trial. We review the denial of a motion for mistrial under an abuse of discretion standard.[14] In this case, there was no abuse of discretion because the original basis for the mistrial — improper testimony about Randall's experience and training — directly prejudiced only Cresco and Randall, not Georgia Pipe. Once Cresco and Randall settled with the plaintiffs and were dismissed from the lawsuit, any prejudice to them became irrelevant. Because Georgia Pipe has failed to make any showing as to how it was prejudiced, we find that the trial court did not abuse its discretion in allowing the trial to proceed against Georgia Pipe.

5. Georgia Pipe contends that the trial court erred in allowing testimony that the decedent intended to donate his organs upon his death and that a bridge had been named after him because such evidence was irrelevant to the full value of his life. "To authorize a reversal, however, the evidentiary ruling must be harmful as well as erroneous."[15] Even if we assume, without deciding, that the court erred in allowing the testimony, such error was harmless and does not authorize a reversal given the quantum of admissible evidence regarding the value of the decedent's life.

6. Georgia Pipe claims that the trial court erred in not giving 25 of its requested charges. Georgia Pipe has not cited specific pages in the record or transcript where we might find these requested charges

---

[13] *Irwin County v. Owens*, 256 Ga. App. 359, 360 (1) (568 SE2d 578) (2002); *Magnan v. Miami Aircraft Support*, 217 Ga. App. 855, 859 (6) (459 SE2d 592) (1995).
[14] *Whitley v. Gwinnett County*, 221 Ga. App. 18, 25 (470 SE2d 724) (1996).
[15] *Cook v. Huff*, 274 Ga. 186, 188 (3) (552 SE2d 83) (2001).

or where the trial court actually ruled that it would not give each charge. Moreover, Georgia Pipe has not made any arguments particular to any specific charge, and instead relies on the general legal concept that a charge should be given if it is correct and adjusted to the case. "It is not the function of this court to cull the record on behalf of a party in search of instances of error."[16] Georgia Pipe has failed to carry its burden, as the appellant, of showing by the record any error in the jury charge.

*Judgment reversed and case remanded with direction. Eldridge and Mikell, JJ., concur.*

Decided June 26, 2003.

*Swift, Currie, McGhee & Hiers, Charles B. Marsh, Scott M. Williamson*, for appellant.

*Cooper & Jones, Lance A. Cooper, Scott B. Cooper, Andrew W. Jones*, for appellees.

---

[16] (Citation and punctuation omitted.) *Asbury v. Ga. World Congress Center*, 212 Ga. App. 628, 632 (4) (442 SE2d 822) (1994).