A02A1848. KROGER COMPANY v. WILLIAMS et al.
(572 SE2d 316)

PHIPPS, Judge.

Jerome Williams was a truck driver who delivered dairy products to Kroger grocery stores. As Williams was assisting a Kroger employee unload a pallet of milk crates from his truck, the crates fell on Williams. He and his wife brought this action against the Kroger Company to recover for his personal injuries and her loss of consortium. They charge the Kroger employee with negligence in using a

[6] 260 Ga. 835 (400 SE2d 1) (1991).
[7] 274 Ga. 886 (561 SE2d 403) (2002).
[8] *Pecina v. State,* 274 Ga. 416, 419 (2) (554 SE2d 167) (2001).

pallet jack to unload the milk, and they charge Kroger with negligence in inadequately training and supervising the employee in use of the equipment. In reliance on the doctrine of assumption of risk, Kroger moved for summary judgment. The trial court denied the motion. We granted Kroger's application for interlocutory appeal. Because the evidence demonstrates that Williams indisputably assumed the risk of his injuries, we reverse.

Williams had been employed by Howard Baer, Inc. as a truck driver for over a year. Three or four times each week, he delivered dairy products to Kroger stores throughout Georgia. Each store's delivery usually consisted of four or five pallets stacked with crates of milk or other dairy products. One pallet generally held fifty-six crates, stacked six to seven crates high, with each crate holding four gallons of milk. A fully stacked pallet was approximately 5'8" or 5'9" high, which was about level with Williams's forehead. A fully loaded pallet weighed from 300 to 400 pounds.

At the time of the incident, Williams was delivering milk to a Kroger store in LaGrange. He had never been to that store before. He had backed his truck up to the loading dock. A Kroger dairy clerk placed a dock plate between the end of the trailer and the loading dock to form a level ramp for unloading the milk. Although it was the responsibility of the dairy clerk to unload the milk, Williams was trained to provide manual assistance during the unloading process. Williams was aware of a company rule prohibiting drivers from operating power equipment, but was not aware of any rules prohibiting them from assisting grocery store employees who were operating such equipment. Williams acknowledged that some drivers provided such assistance, and others did not.

The dairy clerk used a pallet jack to remove one of the pallets of milk from the trailer. Williams stepped to the rear of the pallet and used his hands to steady the milk crates. Williams testified that as the dairy clerk pulled the pallet across the dock plate, the middle board on the bottom of the pallet caught on the plate. Williams told the dairy clerk to move the pallet toward him, Williams, to loosen it. Instead, the clerk pulled the pallet toward himself, and the milk crates thereupon fell on Williams's legs.

Williams acknowledged he was aware that milk fell during the unloading process "all the time." He had seen it happen about five times. Once, he had been helping unload milk when a mishap occurred. When asked what generally causes this to happen, Williams responded, "It could be a number of things. . . . Turning corners too sharply, . . . if the load shifted while you're driving. . . . It could get caught on something, like the case with me when the crate gets caught on the dock plate. A number of reasons." On prior occasions when milk had fallen, Williams had complained to his supervi-

sor about Kroger dairy clerks not knowing how to operate the pallet jacks.

" '(T)he doctrine of the assumption of the risk of danger applies only where the plaintiff, with a full appreciation of the danger involved and without restriction from his freedom of choice either by the circumstances or by coercion, deliberately chooses an obviously perilous course of conduct so that it can be said as a matter of law he has assumed all risk of injury. (Cit.)' [Cit.]"[1] "In Georgia, a defendant asserting an assumption of the risk defense must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks."[2] "The issue of assumption of risk is not ordinarily susceptible of summary adjudication. But in cases where plain, palpable, and indisputable evidence demonstrates that the plaintiff assumed the risk of [his] injuries, summary judgment is appropriate. [Cit.]"[3]

> Knowledge of the risk is the watchword of assumption of risk, and means both actual and subjective knowledge on the plaintiff's part. The knowledge that a plaintiff who assumes a risk must subjectively possess is that of the specific, particular risk of harm associated with the activity or condition that proximately causes injury. The knowledge requirement does not refer to a plaintiff's comprehension of general, non-specific risks that might be associated with such conditions or activities. [Cits.][4]

Citing *Hillman v. Carlton Co.*,[5] the trial court denied summary judgment to Kroger. The court ruled that although Williams may have had comprehension of the general nonspecific risk attendant to participation in the unloading process, a jury question exists whether he had actual and subjective knowledge of the specific risk associated with the particular act of the Kroger employee. We cannot agree. According to Williams, the crates of milk fell on him because the pallet got caught on the dock plate and because the dairy clerk did not know how to operate the pallet jack. Williams acknowledged his subjective awareness of both of these specific risks.

---

[1] (Emphasis omitted.) *Moore v. Service Merchandise Co.*, 200 Ga. App. 463, 464 (408 SE2d 480) (1991).

[2] (Footnote omitted.) *Vaughn v. Pleasent*, 266 Ga. 862, 864 (1) (471 SE2d 866) (1996).

[3] *Jekyll Island State Park Auth. v. Machurick*, 250 Ga. App. 700-701 (1) (552 SE2d 94) (2001).

[4] (Emphasis omitted.) *Hillman v. Carlton Co.*, 240 Ga. App. 432, 434 (1) (522 SE2d 681) (1999).

[5] Id.

*Hillman* is distinguishable. The plaintiff in that case was injured after falling from a forklift onto which he had climbed. He sued the company that maintained the forklift, claiming that because of poor maintenance the forklift had tilted forward and dumped him onto the ground. The plaintiff was aware of a written prohibition against riding on forklifts, but he had never seen a forklift malfunction in the same manner as did the one that caused him to fall. We held that although the plaintiff was aware of and assumed the general risk of falling from the forklift, he was not aware of and did not assume the more specific risk that he would be dumped from it due to a malfunction caused by inadequate maintenance.

*Little Rapids Corp. v. McCamy*,[6] relied on by the Williamses, is also distinguishable. The plaintiff in *McCamy* was a truck driver who sued two defendants. One was a company that was negligent because of the dangerous manner in which it had loaded plaintiff's truck. Specifically, it had stacked loose boxes on top of a secure load without informing plaintiff. The other defendant was a company whose employee had negligently unloaded the truck by stopping and moving again without warning, resulting in the boxes falling on plaintiff. A majority of this court held that the negligence of the former defendant conjoined with the negligence of the latter in proximately causing plaintiff's injury, and that plaintiff had not assumed the risks involved in the careless handling by the latter defendant of the merchandise as dangerously packed by the former.[7] Williams, in contrast, knew that milk pallets get caught on dock plates and that Kroger dairy clerks at times were not proficient in operating pallet jacks.

This case is more akin to *Roberts v. Carter*[8] and *Tennison v. Lowndes-Echols Assn. for Retarded Citizens*,[9] relied on by Kroger. The plaintiff in *Tennison* "knew of the precise risk involved and yet 'voluntarily climbed on top of (a) pallet of lumber (in an attempt to unload it,) knowing that the forklift was too small, could become unbalanced and would overturn if the load of lumber shifted.' "[10] The forklift, in fact, became unbalanced and overturned, injuring the plaintiff. We held that he indisputably assumed the risk of his injuries. The plaintiff in *Roberts* was an experienced mechanic who knew that a hoisted vehicle needed fixed supports as a safety device to prevent the vehicle from falling. Yet, to do some repair work, he voluntarily crawled under a truck that was being held off the ground by

---

[6] 218 Ga. App. 111 (460 SE2d 800) (1995).
[7] Id. at 113-114 (1), 117 (4).
[8] 214 Ga. App. 540 (448 SE2d 239) (1994).
[9] 209 Ga. App. 343 (433 SE2d 344) (1993).
[10] *Little Rapids*, supra, 218 Ga. App. at 114 (1), citing *Tennison*, supra, 209 Ga. App. at 344.

nothing more than a hoist and chain. We held that the plaintiff, voluntarily and without being restrained by any coercive circumstances or emergency, assumed the risk of injuries caused by the truck falling on him. Williams was similarly unrestrained by any exigent circumstances or coercion.

*Judgment reversed. Andrews, P. J., and Mikell, J., concur.*

DECIDED SEPTEMBER 20, 2002 —
RECONSIDERATION DENIED OCTOBER 10, 2002 —

*Carlock, Copeland, Semler & Stair, Douglas A. Wilde, Deborah A. Heineman,* for appellant.

*Monge & Associates, Scott G. Monge, Marc W. Grawert,* for appellees.