**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 21, 2013**

# In the Court of Appeals of Georgia

A13A1006. PIERRE v. ST. BENEDICT'S EPISCOPAL DAY DO-055 SCHOOL.

DOYLE, Presiding Judge.

Kenya Pierre appeals from the grant of summary judgment to St. Benedict's Episcopal Day School ("the School") in the School's breach of contract suit against her for failure to pay tuition and other charges. Pierre contends that the trial court erred because (1) a genuine issue of material fact exists as to whether the parties mutually departed from the terms of the contract, (2) the liquidated damages clause was unenforceable, and (3) the *Prophecy*[1] rule was not applicable in this case. For the reasons that follow, we affirm.

---

[1] *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986).

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

So viewed, the record shows that Pierre is the mother of two daughters who were enrolled at the School, as well as a third, younger daughter attending a separate pre-school program affiliated with the School. On February 15, 2011, Pierre executed two identical contracts with the School reflecting the 2011-2012 re-admission of the two older daughters and Pierre's promise to pay tuition for them both:

> In consideration of, and subject to, the acceptance of this Enrollment Contract by [St. Benedict's School] each of the undersigned parent(s) . . . jointly and severally agrees to pay the full year's tuition specified below for the student specified above. . . The tuition amount (less the amount of the tuition deposit) is due in full on or before June 1, 2011, unless the undersigned elect(s) [an extended payment option or financing agreement]. . .

---

[2] (Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

2

A tuition deposit of $828.80 must accompany this Enrollment Contract to constitute a valid acceptance of enrollment at the School. The tuition deposit is non-refundable. *If the school is notified in writing on or before June 1, 2011 that the Student will not attend for the 2011-2012 academic year the financial obligations to pay additional tuition for the academic year will be released. After June 1, 2011, there will be no tuition refunds or waiving of obligations to pay the additional tuition for the academic year.*[3]

. . .

The [parents] agree that in the event the above-named Student voluntarily withdraws from the School, or is suspended, dismissed or expelled from the School for any reason on or after the first day of classes, the full year's tuition is due and payable by the Responsible Parties to the School as full compensatory liquidated damages under this Enrollment Contract, and not as a penalty; and that it is impossible to more precisely estimate the damages to be suffered by the School in the event of such withdrawal, suspension, dismissal or expulsion. The Responsible Parties acknowledge and agree that the School has needs and expectations for such tuition and has planned for payments of such tuition irrespective of any operating budget surplus that the School may have for such school year . . . .

. . .

---

[3] (Emphasis supplied.)

3

This Enrollment Contract contains the entire agreements of the parties and supersedes all prior agreements, written or oral, between the parties. This Enrollment Contract may not be amended except in a written document signed by all parties that expressly acknowledges such amendment(s). Time is of the essence in this Enrollment contract.

On April 1, 2011, the School's director of admissions, Anne Shamanski, telephoned Pierre and notified her that Pierre's youngest daughter would not be admitted to kindergarten for the 2011-2012 year because the daughter's fifth birthday, on June 29th, was considered too late. Shamanski recommended that the younger daughter remain in the separate pre-school program that she already attended at the School. Pierre replied that she would not keep her daughter in preschool for another year and that she would send her daughter to a different kindergarten. Pierre also informed Shamanski over the phone that her other two daughters would not be attending the School in the 2011-2012 year.

A few weeks later, Shamanski emailed Pierre letting her know that the youngest daughter had been accepted into the kindergarten program and attaching a contract to the email. Pierre did not sign the contract.

Over the ensuing weeks, Shamanski placed a number of phone calls to Pierre to determine if Pierre had changed her mind about enrolling her daughter in

4

kindergarten. Pierre replied over the phone that she would not be enrolling any of her daughters at the School.

On June 16, 2011, Pierre's husband sent an email (from himself and Pierre) to Shamanski informing her that, due to financial reasons, none of their daughters would be attending the School in the 2011-2012 school year. Also in June, Pierre encountered a snafu while enrolling her youngest daughter at a mini-camp at the school, and Pierre was incorrectly informed of a balance on her account for previous after-school care. Pierre provided receipts showing her after-school care payment, and after several rounds of fruitless communications, Pierre was not able to resolve the camp and after-school care billing dispute. The final communication about the camp and after-school care billing dispute was in July 2011; Pierre did not make any further payments to the School.

In December 2011, Pierre received a demand letter from a law firm representing the School seeking payment of $16,524.96 in tuition plus $335.93 in interest. Pierre did not pay the demand, and in January 2012, the School sued Pierre for breach of the tuition contract. Pierre answered, counterclaimed, and later moved for summary judgment or to dismiss the complaint. The School subsequently moved for summary judgment, and, following a hearing, the trial court denied Pierre's

motion to dismiss and granted the School's motion for summary judgment. Pierre now appeals.

1. Pierre contends that the trial court erred by granting summary judgment to the school because a question of fact exists as to whether the parties mutually departed from the terms of the contract, which would require the School to give notice to Pierre that it would require strict compliance with the June 1 notice deadline. We disagree.

Pierre relies on OCGA § 13-4-4, which provides as follows:

> Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement. The contract will be suspended by the departure until such notice.

"For a departure from the terms of a contract to be sufficient to require notice by one of the parties of his or her intention to insist upon strict compliance with the contract, *the departure must be mutual and intended, such that the parties have essentially a*

6

*new agreement concerning the requirements of the original contract*."[4] The question of mutual departure is ordinarily for the factfinder, but it may be decided by the court on a motion for summary judgment in the absence of evidence to support such a finding.[5]

Here, Pierre argues that the School's historically flexible execution of contracts demonstrates its departure from enforcing the notice requirement for the withdrawal of her students from the School. But Pierre relies on her alleged experience in prior years and on her fruitless negotiations with the School over separate aftercare and summer camp obligations, and she points to no evidence that the School, by its conduct in 2011, intended to create a new agreement as to her obligations in the 2011-2012 contract itself. The 2011-2012 contract contained a merger clause and explicitly required any modifications to be in writing. Evidence purporting to show "the modification of other, separate contracts [cannot] constitute evidence of a

---

[4] (Emphasis supplied.) *Duncan v. Lagunas*, 253 Ga. 61, 62 (1) (316 SE2d 747) (1984).

[5] See *Circle K Stores, Inc. v. T. O. H. Assoc.*, 318 Ga. App. 753, 755-756 (1) (734 SE2d 752) (2012) (noting that the mutual departure defense ordinarily raises a jury question but granting summary judgment in the absence of evidence to support the defense); *Salahat v. FDIC*, 298 Ga. App. 624, 629 (3) (680 SE2d 638) (2009) (granting summary judgment).

'mutual departure' from *this* contract within the meaning of OCGA § 13-4-4. Any evidence of a departure from the terms of [other] contracts has no bearing upon the outcome of the case sub judice."[6]

Further, although Pierre averred that she was never invoiced for the 2011-2012 tuition payment, and that it was not a usual practice for the School to provide invoices or receipts, nothing in the contract predicates Pierre's obligation to pay on her receipt of an invoice or billing statement. The contract unambiguously states that the full tuition amount is due "on or before June 1, 2011," and the obligation was created upon execution by Pierre and acceptance by the School. It is undisputed that Pierre failed to provide written notice of her daughters' withdrawal from the School before June 1, 2011, as required by the contract. Accordingly, the trial court correctly found no genuine issue of material fact supporting Pierre's defense of mutual departure.

2. Pierre also contends that the trial court erred by ruling that her obligation to pay full tuition was a liquidated damages clause and not an unenforceable penalty. We disagree.

---

[6] (Punctuation omitted; emphasis in original.) *Choice Hotels Intl. v. Ocmulgee Fields*, 222 Ga. App. 185, 187 (1) (474 SE2d 56) (1996).

If the parties agree in their contract what the damages for a breach shall be, they are said to be liquidated and, unless the agreement violates some principle of law, the parties are bound thereby. A liquidated damages provision is enforceable if (1) the injury caused by the breach is difficult or impossible to estimate accurately, (2) the parties intended to provide for damages rather than a penalty, and (3) the stipulated sum is a reasonable estimate of the probable loss. The party who defaults on a contract has the burden of proving that a liquidated damages provision is an unenforceable penalty.[7]

(a) Pierre asserts that the measure of damages for her withdrawal after June 1 is not difficult to estimate accurately, in part because the contract provides for a deposit of $818.80, which Pierre argues is the real measure of damages. But this ignores the School's need to plan and budget for the school year and the fact that the School was not fully enrolled for the grades in which her daughters attended.[8] The School presented evidence that it operated at a deficit, and tuition, even at full

---

[7] (Footnote and punctuation omitted.) *Turner v. Atlanta Girls' School, Inc.*, 288 Ga. App. 115, 116 (653 SE2d 380) (2007).

[8] Pierre's inclusion in the record of an advertisement for fall openings in classes not attended by her daughters does not preclude summary judgment because in the face of direct testimonial evidence from the School about its fall enrollment capacity, "[g]uesses or speculation which raise merely a conjecture or possibility, . . . are not sufficient to create even an inference of fact for consideration on summary judgment." *Cagle Constr., LLC v. Travelers Indem. Co.*, 305 Ga. App. 666, 669 (1) (700 SE2d 658) (2010).

9

enrollment, did not cover expenses. It is clear that the impact of the withdrawal of a student could not be estimated accurately because the School's budgeting decisions are made in March of each year for the following fall. Based on the record, Pierre did not meet her burden to show that the injury caused by her late withdrawal was difficult to accurately estimate.

(b) Pierre also failed to show that the parties intended the tuition payment obligation to be a penalty and not damages. "Whether a provision represents liquidated damages or a penalty does not depend upon the label the parties place on the payment but rather depends on the effect it was intended to have and whether it was reasonable."[9] It is undisputed that the amount owed is the tuition amount, which is set to defray the costs of holding a spot open for a student, as opposed to an arbitrary or punitive amount. The record shows that the contract's structure of a deadline for withdrawal evinces no intent to penalize the parents, rather it affords the School a way to plan and budget for the coming school year according to enrollment numbers. Accordingly, Pierre has not shown that the tuition payment was an unenforceable penalty.[10]

---

[9] *Turner*, 288 Ga. App. at 117.

[10] See id.

10

(c) Likewise, Pierre failed to show that the stipulated tuition payment was an unreasonable estimate of the probable loss. As noted above, the School operated at a deficit in the 2011-2012 year, and tuition payments do not cover expenses even at full enrollment.

> The withdrawal of a student would, absent the liquidated damages provision, result in a loss of the expected tuition and an increase in the [S]chool's deficit. Based on the evidence, [Pierre is] unable to meet [her] burden of showing that the contractual stipulation of one year's tuition as damages is a penalty because it is not a reasonable estimate of the [S]chool's probable loss for a breach.[11]

3. Finally, Pierre argues that the trial court improperly applied the *Prophecy* rule against her to reconcile evidence that she orally told the School of her withdrawal of her daughters in April 2011 because her youngest daughter had not been accepted with evidence that her husband emailed the School their withdrawal for financial reasons on June 16, 2011.

> Under *Prophecy*, a trial court that is faced with a party's self-contradictory sworn testimony on a material fact should disregard the portions of that testimony that favor the party when deciding a motion for summary judgment, unless the party offers a reasonable

---

[11] Id.

11

explanation for the contradiction. The *Prophecy* rule applies only to self-contradictions in a party's sworn testimony. It does not apply to unsworn statements, non-party witness testimony, or contradictions between a party's testimony and another person's testimony.[12]

Here, the purported testimony was not contradictory in any material way. Pierre orally notified the school in April, and notified the school in writing on June 16. There is no relevant contradiction to be resolved, and the *Prophecy* rule has no bearing on the question of when the School was notified in writing of the withdrawal of Pierre's daughters. Nevertheless, in light of our rulings in Divisions 1 and 2, this enumeration presents no basis for reversal.

*Judgment affirmed. McFadden and Boggs, JJ., concur.*

---

[12] (Footnotes omitted.) *CSX Transp., Inc. v. Belcher*, 276 Ga. 522, 523 (1) (579 SE2d 737) (2003).