**FIFTH DIVISION**
**DILLARD, P. J.,**
**REESE and BETHEL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 1, 2017**

# In the Court of Appeals of Georgia

A16A1573. OKLAHOMA GAMING VENTURES, INC. v. PCT HOLDINGS, LLC.

BETHEL, Judge.

Oklahoma Gaming Ventures, Inc. appeals from the final judgment entered against it following a bench trial. In its final judgment, the trial court ordered Oklahoma Gaming to pay amounts past-due and owing under contract and to remove PCT Holdings' software from its gaming machines. The trial court also found PCT Holdings' termination of that contract proper. Oklahoma Gaming argues that the trial court should have found that PCT Holdings waived the applicable contractual payment provision through its conduct, and therefore the trial court erred in finding PCT Holdings' termination of the contract justified. We disagree and affirm because

under the evidence, the trial judge was authorized to find that the requirements of a mutual disregard of the contract were not present.[1]

"On appeal from the entry of judgment in a bench trial, the evidence must be viewed in the light most favorable to the trial court's findings of fact." *Realty Lenders, Inc. v. Levine*, 286 Ga. App. 326, 326-27 (649 SE2d 333) (2007). So viewed, the trial record reflects that PCT Holdings owned a specific type of gaming software, which had originally belonged to its predecessor-in-interest, Kodiak Gaming Ventures. Kodiak Gaming entered into agreements with Oklahoma Gaming that permitted Oklahoma Gaming to use Kodiak Gaming's slot machine software and to place machines loaded with the software at various locations. Disputes between Oklahoma Gaming and Kodiak Gaming eventually arose, which led the two parties to sign a settlement and release agreement in 2009. The parties later began feuding once more — this time over payments and other alleged defaults — culminating in Kodiak Gaming demanding full payment of past-due amounts and instructing Oklahoma Gaming to stop using its software. Several months later and after not receiving the requested amounts due, Kodiak Gaming terminated the agreements with

---

[1] PCT Holdings filed a motion to dismiss this appeal, arguing that it was untimely under OCGA § 5-6-38. We disagree and deny that motion.

2

Oklahoma Gaming. After acquiring the assets of Kodiak Gaming, PCT Holdings brought suit against Oklahoma Gaming.[2] Oklahoma Gaming made a partial payment of the amount due, and the claims brought by PCT Holdings were eventually dismissed without prejudice, and then refiled, and consolidated with the initial action. In the consolidated action, PCT Holdings contends that Oklahoma Gaming breached the contract between the parties, prompting PCT Holdings to terminate the contract, and operated the machines for a broader period of time than had initially been disclosed to PCT Holdings so that additional revenue was due to PCT Holdings. PCT Holdings further argued that to the extent Oklahoma Gaming operated the machines outside of the license agreement, they were entitled to an injunction forcing Oklahoma Gaming to stop using PCT Holdings' software.

The trial court awarded $4,910.55 to PCT Holdings for the additional months Oklahoma Gaming had operated the software, and found that although PCT Holdings accepted late payments from Oklahoma Gaming, there was no mutual departure from the terms of the contract specifying the time for payment. Rather, PCT Holdings regularly requested timely payment. The trial court also awarded injunctive relief to

---

[2] We will refer to Kodiak Gaming Ventures as PCT Holdings for the remainder of this opinion.

PCT Holdings, ordering Oklahoma Gaming to remove PCT Holdings' software from its machines. This appeal followed.

Oklahoma Gaming argues that the trial court should have found that the parties mutually disregarded the payment provisions of the applicable contract because the record is devoid of evidence showing that PCT Holdings insisted on timely payment. In support of its argument, Oklahoma Gaming relies on OCGA § 13-4-4.

OCGA § 13-4-4 provides that

> [w]here parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement. The contract will be suspended by the departure until such notice.

"For a departure from the terms of a contract to be sufficient to require notice by one of the parties of his or her intention to insist upon strict compliance with the contract, the departure must be mutual and intended, such that the parties have essentially entered into a new agreement concerning the requirements of the original contract." *Duncan v. Lagunas*, 253 Ga. 61, 62 (316 SE2d 747) (1984). Whether there has been a mutual departure from the terms of a contract is a question for the fact-

4

finder. *See Continental Cas. Co. v. Union Camp Corp.*, 230 Ga. 8, 11 (195 SE2d 417) (1973); *Pierre v. St. Benedict's Episcopal Day School*, 324 Ga. App. 283, 286 (1) (750 SE2d 370) (2013); *First Union Nat. Bank of Ga. v. Davies-Elliott, Inc.*, 215 Ga. App. 498, 504 (2) (452 SE2d 132) (1994).

The testimony before the trial court established that while PCT Holdings sometimes accepted late payment, the company also complained of their untimeliness and insisted on regular payments. Thus, under the evidence, the trial judge was authorized to find that the requirements of a mutual disregard of the contract were not present. *See Phoenix Air Conditioning Co. v. Towne House Developers, Inc.*, 124 Ga. App. 782, 785 (186 SE2d 429) (1971).

*Judgment affirmed. Dillard, P. J., and Reese, J., concur*.