**WHOLE COURT**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. http://www.gaappeals.us/rules**

**March 10, 2017**

# In the Court of Appeals of Georgia

A16A1521. FULLER et al. v. McCORMICK et al.
A16A1522. FULLER v. McCORMICK et al.

MILLER, Presiding Judge.

William McCormick was injured when a large rock fell from the bucket of the Bobcat he was operating and hit his knee after he deliberately parked the Bobcat on a sloped surface, overloaded the bucket with rocks, and then fully extended the Bobcat's arm to dump the rocks. McCormick and his wife sued Cindy Fuller, Thomas Fuller, and Full Stride Farm, Inc. ("Full Stride Farm") (collectively, "the Fullers"), on grounds of negligence, negligence per se, failure to train, failure to supervise, failure to maintain, vicarious liability, and loss of consortium.[1] The Fullers filed separate motions for summary judgment, which the trial court denied. The trial court

---

[1] Although McCormick stated in his deposition that he had a pending Workers' Compensation claim, there is no evidence of this claim in the record.

granted a certificate of immediate review, and this Court granted the Fullers' applications for interlocutory review. After a thorough review of the record, we reverse the denial of the Fullers' motions for summary judgment because McCormick assumed the risk of injury as a matter of law.

"On appeal from the grant or denial of summary judgment, we conduct a de novo review, with all reasonable inferences construed in the light most favorable to the nonmoving party." (Citation omitted.) *Kovacs v. Cornerstone Nat. Insurance Co.*, 318 Ga. App. 99 (736 SE2d 105) (2012).

So viewed, the evidence shows that, from 1999 through 2013, McCormick was a full-time employee at Full Stride Farm, a small family enterprise that was owned and run by Cindy Fuller ("Cindy"). McCormick also worked for Thomas Fuller ("Thomas") on a personal basis, running errands such as taking out the trash and mowing the lawn.

When McCormick first started his employment at Full Stride Farm in 1999, he was asked to use a Bobcat to complete various tasks on the farm. The Bobcat had a roof and side cages for protection, and the cockpit of the Bobcat contained several warning signs, including: "carry load low, avoid steep slopes and high steep turns, never carry more than 1700 pounds," and "avoid overturn." Although the Fullers

never formerly trained McCormick regarding how to use the Bobcat, McCormick used this Bobcat on a regular basis without incident for the next thirteen years.

On September 8, 2012, the Fullers asked McCormick to use the Bobcat to move large rocks, dirt, and roots from a demolition site into the back of a dump truck. McCormick decided where to park the dump truck and how to load the rocks from the Bobcat into the truck. Specifically, McCormick decided to park the Bobcat on lower ground, below the dump truck, which then required him to fully extend the arm of the Bobcat ten to twelve feet off of the ground in order to load the rocks and other debris into the truck. McCormick overloaded the bucket with rocks sticking up approximately four inches above the edge of the bucket, even though he was aware that doing so could cause the rocks to fall out. As McCormick lifted the overloaded bucket, it struck the edge of the dump truck and one of the rocks tumbled out. The rock struck McCormick's left knee, which was slightly protruding out from the front of the Bobcat. As a result of his injuries, McCormick required knee replacement surgery and he has suffered chronic knee pain since the accident.

Case No. A16A1521

3

1. In Case No. A16A1521, Cindy Fuller and Full Stride Farm argue that the trial court erred in denying their motion for summary judgment because McCormick assumed the risk of injury as a matter of law. We agree.

"To recover for injuries [allegedly] caused by another's negligence, a plaintiff must show four elements: a duty, a breach of that duty, causation and damages." (Citations and punctuation omitted.) *Webb v. Day*, 273 Ga. App. 491, 494 (3) (615 SE2d 570) (2005). In his complaint, McCormick alleged that the Fullers were negligent for, among other reasons, failing to train him on the use of the Bobcat.

McCormick is correct insofar as it is well-settled that an employer is obligated to train employees on the use of equipment and it is undisputed that McCormick did not know how to use the Bobcat when he was hired, and the Fullers did not provide any training.[2] See *Moore v. Dublin Cotton Mills*, 127 Ga. 609 (56 SE 839, 842) (1907). However, even if the Fullers breached their duty by failing to train McCormick, he is nonetheless barred from recovering in tort because he assumed the risk of injury as a matter of law. See *Vaughn v. Pleasent*, 266 Ga. 862, 868 (1) (471 SE2d 866) (1996) (assumption of the risk bars recovery on a negligence claim).

---

[2] McCormick never requested training and did not ask for assistance because he assumed that if Cindy, a female, could operate the Bobcat, he could as well.

4

(a) Under Georgia law, assumption of the risk provides a complete defense to liability and bars recovery where, "the plaintiff himself is negligent in such a way that his own negligence is the sole proximate cause" of his injury. *Sapp v. Effingham County Bd. of Ed.*, 200 Ga. App. 695, 696 (1) (409 SE2d 89) (1991). "Although assumption of the risk is ordinarily a jury question, in plain, palpable, and indisputable cases resolution of the issue by a jury is not required." (Citations omitted.) *Fowler v. Alpharetta Family Skate Ctr., LLC*, 268 Ga. App. 329, 331 (3) (601 SE2d 818) (2004); see also *Robinson v. Kroger Co.*, 268 Ga. 735, 739 (1) (493 SE2d 403) (1997) (summary judgment proper in plain and palpable cases).

When a motion for summary judgment is premised on the affirmative defense of assumption of the risk, the defendants bear the initial burden of proof to come forward with evidence sufficient to establish "that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks." (Citations omitted.) *Vaughn*, supra, 266 Ga. at 864 (1); see also *Christian v. Eagles Landing Christian Academy, Inc.*, 303 Ga. App. 113 (1) (692 SE2d 745) (2010). In assessing whether defendants have met this burden, we apply a subjective standard "geared to the particular plaintiff and his situation, rather than that of a reasonable person of

5

ordinary prudence." (Citations and punctuation omitted.) *Muldovan v. McEachern*, 271 Ga. 805, 808 (2) (523 SE2d 566) (1999). Here, the record clearly shows that the Fullers have met their burden.

*(i) McCormick's actual knowledge of the open and obvious danger*

"Knowledge of the risk is the watchword of assumption of the risk, and means both *actual* and *subjective* knowledge on the plaintiff's part." (Citations and punctuation omitted.) Id. at 808 (2). Nevertheless "[i]n some cases, a plaintiff's assumption of the risk can be implied from facts showing that he was aware of the risk." *Tennison v. Lowndes-Echols Assn. for Retarded Citizens*, 209 Ga. App. 343, 344 (433 SE2d 344) (1993) (plaintiff assumed risk where he climbed on top of a pallet of lumber positioned on a forklift, the lumber shifted while he was standing on it, and he knew that the forklift carrying the load of lumber upon which he was standing could turn over and cause him to fall). This is because "[a] person cannot undertake to do what is obviously a dangerous thing and at the same time avoid the responsibility for the self-assumed risk." *First Pacific Mgmt. Corp. v. O'Brien*, 184 Ga. App. 277, 281 (361 SE2d 261) (1987).

In this case, the danger arising from McCormick's conduct was obvious. First, McCormick had actual knowledge of the open and obvious danger caused by fully

6

extending the arm of the Bobcat overhead while the bucket was overloaded with heavy rocks. Indeed, he admitted as much in his testimony, when he stated that he knew "something could happen" if he "work[ed] the bucket that high." Second, not only was the lack of front cage protection to guard against falling objects visible and obvious, but the Bobcat also contained warning signs that cautioned McCormick against the action he undertook. See *Desai v. Silver Dollar City, Inc.*, 229 Ga. App. 160, 165 (3) (493 SE2d 540) (1997) (summary judgment warranted where plaintiff ignored warning signs until she was injured).

*(ii) McCormick subjectively understood and appreciated the risks*

McCormick admitted that he subjectively appreciated the risk of overloading the Bobcat's bucket and fully extending the arm in this manner. After using this Bobcat for thirteen years without incident, on the day of the accident, McCormick deliberately chose to have the dump truck, which had sides well-above ten to twelve feet off of the ground, parked on top of a three to four foot slope. McCormick admittedly knew that he would be lifting large and heavy rocks and that he overloaded the bucket with two to four inches of rock visible above the rim.

Moreover, McCormick admitted that he was concerned for his safety when he extended the arm of the Bobcat bucket above the high wall of the dump truck.

7

Specifically, McCormick admitted that he knew better than to load large mounds of dirt and rock that could stick up over the top of the bucket because he realized that rocks could fall out that way. And he stated that he was "nervous" using the Bobcat with the arm extended as high as it was under the circumstances because he feared "something could happen."

When a person admits knowledge of the risk caused by his own conduct, *even if the risk manifests itself differently than he expected*, that person has assumed the risk of injury. See *Kroger Co. v. Williams*, 257 Ga. App. 833, 835 (572 SE2d 316) (2002) (summary judgment proper where the plaintiff was injured when a pallet of milk crates fell on him while he was assisting another employee unload the crates because the plaintiff knew that milk fell during the unloading process all the time and thus he had the requisite subjective knowledge).

*(iii) McCormick voluntarily exposed himself to those risks*

As noted, McCormick decided where to park the dump truck, even though he understood that this required him to fully extend the Bobcat's arm. Additionally, McCormick admittedly ignored warning signs in the cab of the Bobcat instructing users to "carry load low, avoid steep slopes and high steep turns." Moreover, in his deposition, McCormick admitted that there was no malfunction or problem with the

8

Bobcat that caused the rock to fall out. Although McCormick argues that he was coerced into moving the rocks in this manner, the record reflects that he alone chose where to park the dump truck and how to use the Bobcat.

(b) The Fullers have thus come forth with evidence to show that McCormick assumed the risk of injury as a matter of law on the day of the accident. The burden then shifted to McCormick to "come forward with some evidence that shows a genuine, disputed issue of fact as to some element of the affirmative defense." *Kane v. Landscape Structures, Inc.*, 309 Ga. App. 14, 16-17 (709 SE2d 876) (2011). McCormick failed to meet this burden of production because he pointed to nothing in the record to raise a genuine issue of fact with regard to his assumption of the risk.

In an affidavit submitted in response to the Fullers' motions for summary judgment, McCormick stated that he had never used the Bobcat in this manner before, he did not know that he needed to use it differently, and he was unaware of the risk of rocks falling out. In his affidavit, McCormick feigned ignorance of the open and obvious danger. However, McCormick admitted in his deposition that he knew he was engaged in dangerous behavior and that he "had enough sense to know" that overloading a bucket of rocks up high would cause the rocks to fall on him. McCormick further admitted in his deposition that he knew "something could

9

happen" if he used the Bobcat in the manner he did on the day of the accident. Nevertheless, he admitted that he loaded the bucket in such a way that large rocks were sticking up as much as four inches above the edge of the bucket, and that he had to fully extend the Bobcat's arm overhead to dump the contents of the bucket. Because McCormick's affidavit directly contradicts his deposition testimony without offering any explanation for the contradiction, the trial court should have, but failed to, discount McCormick's affidavit testimony under the *Prophecy* rule. See *Hayward v. Kroger Co.,* 317 Ga. App. 795, 798-799 (3) (a) (733 SE2d 7) (2012).

Absent McCormick's self-serving affidavit, McCormick has failed to point to any evidence to meet his burden to demonstrate a genuine issue of material fact with respect to his assumption of the risk. McCormick's voluntary decision to lift the overloaded bucket of large rocks high up while on a slope, in the face of warning signs, even though he actually and subjectively knew a rock could fall out and hit him, is fatal to his claim. See *Desai*, supra, 229 Ga. App. at 165 (3).

We recognize that the majority of cases in this Court addressing assumption of the risk conclude that this issue is better left to the jury. However, where, as here, the issue is "plain, palpable, and indisputable," summary judgment is appropriate. *Fowler*, supra, 268 Ga. App. at 331 (3). The Fullers have met their burden to show

10

that McCormick knowingly and voluntarily assumed the risk of injury, and McCormick has failed to meet his burden to defeat the affirmative defense of assumption of the risk. Accordingly, the Fullers are entitled to summary judgment as a matter of law. See, e.g., *Sones v. Real Estate Dev. Group, Inc.*, 270 Ga. App. 507, 508-509 (1) (606 SE2d 687) (2004) (affirming summary judgment based on assumption of the risk where workers were in a wooden platform being lifted by a forklift at night and they were injured when the forklift tilted and knocked them to the ground, and this Court found that there was an obvious risk that the platform could move, the plaintiff was aware that he was not tied off as a safety precaution, and this was the second time the plaintiff had used the work platform).

"It defies both logic and our law to permit a recovery under this evidence." *Desai*, supra, 229 Ga. App. 165 (3). Accordingly, the trial court erred when it denied the Fullers' motions for summary judgment on the ground of assumption of the risk, and McCormick is not entitled to recover on any of his tort claims.

2. McCormick's wife's loss of consortium claim is dependent on her husband's right to recover. *Sewell*, supra, 215 Ga. App. at 612 (2). Having concluded that McCormick assumed the risk of his actions, he cannot recover, and, therefore, his wife's loss of consortium claim fails as well. Id.

11

Case No. A16A1522

3. In light of our conclusion in Division 1 that McCormick assumed the risk of injury and that the Fullers were entitled to summary judgment, we need not address Thomas's arguments as to causation.

*Judgment reversed. Branch, Mercier, Reese, and Bethel, JJ., concur. Ellington, P. J., Dillard, P. J., and McMillian, J., concur in judgment only. McFadden, P. J., dissents.*

A16A1521. FULLER et al. v. McCORMICK et al.

A16A1522. FULLER v. McCORMICK et al.

MCFADDEN, Presiding Judge, dissenting.

I respectfully dissent because this is not a case where the defense of assumption of the risk is susceptible of summary adjudication. And Thomas Fuller's alternate arguments for summary judgment lack merit. So I would affirm the trial court's denial of the defendants' motions for summary judgment.

1. *Assumption of the risk.*

An assumption of risk defense

is not ordinarily susceptible of summary adjudication, and summary judgment is appropriate only where the evidence is plain, palpable, and

2

indisputable. In Georgia, a defendant asserting an assumption of the risk defense must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks.

*Bills v. Lowery*, 286 Ga. App. 301, 304 (3) (648 SE2d 779) (2007) (citation and punctuation omitted). The defendant must show "both actual and subjective knowledge on the plaintiff's part. The knowledge that a plaintiff who assumes a risk must subjectively possess is that of the specific, particular risk of harm associated with the activity or condition that proximately causes injury." *Kroger Co. v. Williams*, 257 Ga. App. 833, 835 (572 SE2d 316) (2002) (citation omitted).

The majority would hold that McCormick had actual and subjective knowledge of the particular risk that caused his injury — rocks falling from the bucket of the Bobcat — because the danger was obvious and because McCormick overloaded the bucket with rocks, even though he was aware that doing so could cause rocks to fall out. In fact, McCormick specifically testified that, although he was aware of the risk of the Bobcat falling over, he did not know of the risk of the harm that injured him. And he specifically testified that he did not overload the bucket.

(a) *Specific knowledge*.

3

On the issue of McCormick's knowledge, he submitted his affidavit in which he explicitly testified that he did not know that "using the Bobcat to clear large rocks and rubble and dumping it into a dump truck with the bucket up high was different than using it how [he] had used it before," that "using the Bobcat on a hill or that dumping from a different level than the dump truck needed to be done any differently than [he] had done before," or that "there was a risk that the rocks could fall out of the bucket if the Bobcat was operated in the manner it was operated on the date of the incident." He added that he "had never had any items fall out of the bucket when [he] used the Bobcat before." This is direct evidence that McCormick lacked actual knowledge of the danger that resulted in his injury and did not understand or appreciate the risks associated with such danger.

Moreover, although McCormick did testify that he was "worried that something could happen," as the majority observes, he consistently explained that the danger he was worried about was the Bobcat tipping over:

**Q.** You had the bucket way up high?
**A.**
Yeah. To get over that dump truck. I hope this thing don't turn over.
**Q.**
Okay. But you felt nervous because you felt that it was dangerous?
**A.**
Something could happen, yes, sir.

4

**Q.**
Did you have any thoughts about what might happen?
**A.**
The side -- The side might tip over or something. Other than that, no.

. . .

**Q.**
So you knew, you were afraid something was going to happen because it was unstable, right?
**A.**
I thought something was going to happen because it was extended out high.
**Q.**
You were afraid something was going to happen because it was extended out high?
**A.**     But what I thought would happen, I thought it might tilt over or something. I knew it couldn't do that.

The majority would disregard McCormick's affidavit testimony on the ground that the trial court should have discounted it under *Prophecy v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986). But McCormick's testimony is not contradictory: in his deposition McCormick testified that he was concerned that the Bobcat would tilt over; in his affidavit he testified that he did not know of the risk of rocks falling out of the Bobcat's bucket. Testimony "is contradictory if one part of the testimony asserts or expresses the opposite of another part of the testimony." *Prophecy*, 256 Ga. at 30 (2). Here, "[t]here is no relevant contradiction to be resolved,

5

and the *Prophecy* rule has no bearing on the question of" whether McCormick knew of the risk of rocks falling from the bucket. *Pierre v. St. Benedict's Episcopal Day School*, 324 Ga. App. 283, 289 (3) (750 SE2d 370) (2013). So there is no basis for disregarding the only direct evidence of McCormick's knowledge of the risk that injured him. "Consequently, summary judgment for [the defendants is] not warranted on this basis." *Bills*, 286 Ga. App. at 304 (3).

The majority cites *Kroger*, supra, 257 Ga. App. at 835, for the proposition that when a person admits knowledge of the risk caused by his own conduct, even if the risk manifests itself differently than he expected, that person has assumed the risk of injury. But in *Kroger*, the plaintiff admitted knowledge of the specific risk that caused his injury. There, the plaintiff, a delivery driver, was injured when, while assisting a store employee unload a pallet of milk crates from his truck, the crates fell on the plaintiff. Id. at 834. The plaintiff "acknowledged he was aware that milk fell during the unloading process 'all the time,'" and that one cause was "'like the case with [him] when the crate gets caught on the dock plate.'" Id. He had even complained to his supervisor about the store's employees "not knowing how to operate the pallet jack[]" that caused the crates to fall on him. Id. at 835. And in *Kroger*, we repeated our long-standing requirement that for assumption of the risk to apply,

6

the knowledge that a plaintiff . . . must subjectively possess is that of the *specific, particular risk of harm associated with the activity or condition that proximately causes injury*. The knowledge requirement does not refer to a plaintiff's comprehension of general, non-specific risks that might be associated with such conditions or activities.

Id. (citation omitted; emphasis added). See also *Vaughn v. Pleasent*, 266 Ga. 862, 864 (1) (471 SE2d 866) (1996) (same); *Trustees of Trinity College v. Ferris*, 228 Ga. App. 476, 479 (3) (491 SE2d 909) (1997) (same).

(b) *Overloading of the bucket.*

Contrary to the majority, McCormick testified that he did not overload the bucket with rocks, because he wanted to avoid the risk of rocks falling:

> **Q.** How high was the load of rock and such that were in the bucket when this rock came off and hit you?
> **A.** I would say it wasn't level, with the rock sticking up maybe four inches tall or something.
> **Q.**
> So when you loaded it up, . . . you had chosen to get a load of rock that was sticking up maybe four inches over the level of the bucket?
> **A.**
> No. If it was level, the end of it might have been sticking up like that, but *I didn't have a big mound of dirt or nothing over the top of the bucket because I had enough sense to know that when I dumped that it would've fallen on me.*
> **Q.**
> That's what I'm trying to find out. Was the load that you had level with the top of the bucket or was a rock or two sticking up a few inches abo e the bucket?
> **A.**

7

*A rock or two was sticking up a few inches above it honestly, but the whole load wasn't sticking up. You know, it wasn't a mound over it.*

As the majority writes and this testimony demonstrates, McCormick admitted that he subjectively appreciated the risk of overloading the Bobcat's bucket, but the majority points to no record evidence that McCormick did, in fact, overload the bucket. There is no basis for concluding that McCormick overloaded the bucket, given his undisputed testimony that he "didn't have a big mound of dirt or nothing over the top of the bucket" and that a "rock or two was sticking up a few inches above [the bucket] honestly, but the whole load wasn't sticking up." .

The evidence of McCormick's assumption of the risk is not plain, palpable, and indisputable. So the trial court did not err by denying the defendants' motion for summary judgment on this ground.

2. *Thomas Fuller's other arguments.*

Thomas Fuller argues that he did not breach a duty to McCormick; that McCormick breached his own affirmative duty to ensure his own safety; and that no act of Thomas Fuller's caused the accident. None of these arguments entitles Thomas Fuller to summary judgment.

(a) *Duty of care.*

8

Thomas Fuller argues that he owed no duty of care to McCormick because on the day of the accident, McCormick's job was to clear debris from a demolition site and the duty of ordinary care does not apply to construction or demolition sites. Under OCGA § 34-7-20, an employer

> is bound to exercise ordinary care . . . in furnishing machinery equal in kind to that in general use and reasonably safe for all persons who operate it with ordinary care and diligence. If there are latent defects in machinery or dangers incident to an employment, which defects or dangers the employer knows or ought to know but which are unknown to the employee, then the employer shall give the employee warning with respect thereto.

OCGA § 34-7-20.

Thomas Fuller cites *Elsberry v. Ivey*, 209 Ga. App. 620 (434 SE2d 158) (1993), a premises liability case, for the proposition that the duties of OCGA § 34-7-20 do not apply to employees on construction or demolition sites. In *Elsberry*, the plaintiff was injured while engaged in the demolition of a roof, which, as the work progressed, created danger of which the plaintiff knew or which he should have anticipated. We held that because the plaintiff was hired for the express purpose of assisting in demolition, and the unsafe conditions from which his injury resulted "arose from or were incidental to the work undertaken by him," the general rule that an owner or

9

occupier of land has a duty to keep his premises safe for workers did not apply. Id. at 621 (2) (b). And we noted, "[t]he servant could not have engaged in the work *without knowing and seeing* . . . the identical condition which, as grounds of negligence, it is alleged that the master allowed to exist." Id. at 622 (2) (c) (citation and punctuation omitted).

Here, McCormick was engaged in cleaning up *after* demolition, not assisting in demolition; his clean-up work was not making the premises less safe as the work progressed, unlike the demolition work of the plaintiff in *Elsberry*; and he testified that he did not understand the risk. The other case cited by Thomas Fuller, *Howell v. Farmers Peanut Market of Sowega*, 212 Ga. App. 610 (442 SE2d 904) (1994), also was a premises liability case in which the plaintiff was injured while assisting in construction. Both cases are distinguishable and neither supports Thomas Fuller's argument that he owed McCormick no duty.

(b) *Duty to ensure his own safety.*

Thomas Fuller argues that he is entitled to summary judgment because McCormick failed "to observe and protect himself from visible and manifest defects which exist[ed] in his work environment." This is simply restating the assertion that McCormick assumed the risk of injury. See *Carter v. Country Club of Roswell*, 307

10

Ga. App. 342, 346 (705 SE2d 170) (2010). And as detailed above, whether McCormick assumed the risk of injury is a question for jury resolution.

(c) *Causation.*

Finally, Thomas Fuller argues that he is entitled to summary judgment because McCormick has failed to point to evidence of a causal connection between Thomas Fuller's conduct and McCormick's injury. But McCormick points to Cindy Fuller's deposition in which she testified that the incident occurred because McCormick was using the Bobcat negligently. That testimony, he argues, allows the conclusion that if the defendants had trained him properly, he would not have used the Bobcat negligently, and he would not have been injured. He also points to evidence that the defendants could have provided a screen to prevent objects from entering the cockpit, thereby preventing his injury. So Thomas Fuller has not shown that he is entitled to summary judgment for lack of evidence of causation. See *Cowart v. Widener*, 287 Ga. 622, 628 (2) (b) (697 SE2d 779) (2010) ("In the tort context, proximate causation includes all of the natural and probable consequences of the tortfeasor's negligence[.]").

11

As the defendants have not shown that they are entitled to summary judgment because McCormick assumed the risk of injury and because none of Thomas Fuller's alternate arguments entitle him to summary judgment, I would affirm the trial court.